Texas & Pacific Railway Company v. B. T. Maddox et al.

Decided May 22, 1901.

**1.—Jurisdiction—State and Federal Courts—Removal—Nonsuit.**

The removal of a cause by defendant from the State to the Federal court will not prevent the former from taking jurisdiction of a new suit on the same cause of action, where plaintiff had taken a voluntary nonsuit in the removed cause after entering on the trial.

**2.—Railway— Overflow—Pleading.**

See pleading held to sufficiently show the unlawful flooding of plaintiffs' land by the embankments of a railway, though not alleging that the natural drainage from the land was interfered with.

**3.—Pleading—Particularity.**

It was not necessary, as against special demurrer, to show dates of rains occasioning overflow to plaintiffs' land caused by a railway embankment,—it being alleged that they were within the period of limitation but that plaintiff could not give the dates,—nor to name the various members of the family made sick in consequence of such overflow.

**4.—Harmless Error.**

Error in overruling exceptions to an allegation of permanent damage to plaintiff's property by overflow was not ground for reversal where only the issue of temporary damage was submitted after hearing the evidence.

**5.—Damages—Evidence—Opinion.**

One familiar with a lot and the effect of verflows upon it may testify as to its value before and after such overflows, though not qualified as an expert on values.

**6.—Charge—Harmless Error.**

Refusal of a charge that permanent damages were not recoverable for overflow of premises could not be reversible error where only temporary damages were submitted to the jury.

**7.—Evidence—Overflow—Sickness of Others.**

On the issue as to sickness in plaintiff's family being caused by overflow of his premises, it was proper to show sickness of others in the neighborhood, as an effect of the same cause.

**8.—Joint Tort Feasors.**

Each joint tort feasor is liable for the entire consequence of their acts.

**9.—Injury to Land—Conveyance.**

A conveyance of land by the owner will not prevent a recovery by him in a suit for damages from overflowing it while occupied by him, where the deed was in fact a mortgage. How far such deed, if absolute, would prevent such recovery, questioned.

**10.—Railway—Injury to Land—Subsequent Purchaser.**

A railway company could not by improper construction of its roadbed, acquire the right to subsequently injure land by overflow, as against one purchasing it after such construction; the cause of action arises when injury is inflicted.

**11.—Proximate Cause.**

A railway raising its tracks is liable for damages by overflow of a lot caused

by the necessary raising of the grade of its street by the city in order to cross. the raised railway track.

12.—Harmless Error—Joint Tort Feasors.

One of two joint wrongdoers can not complain of an instruction releasing the other from liability.

13.—Overflow—Raising Lot to Prevent.

A lot owner was not under obligation to raise the surface of his lot to avoid the effects of overflow from a railway embankment.

Appeal from Dallas. Tried below before Hon. Richard Morgan.

*Perkins, Gilbert & Hall,* for appellant.

*Crawford & Crawford, W. T. Strange,* and *Jos. E. Cockrell,* for appellee.

COLLARD, Associate Justice.—Appellee B. T. Maddox brought this suit July 19, 1899, against the Texas & Pacific Railway Company and Dallas Consolidated Electric Street Railway Company, alleging that defendants, by the construction of their road without sufficient waterways. in Dallas, had caused the overflow of his homestead, resulting in sickness in his family, requiring medicine and doctor bills to his wife and children,—the wife's health permanently injured, loss of services, and claiming damages for overflowing his well, partially filling it with sand, killing fruit trees and shrubbery, injuring dwelling and other improvements on the place, and injury to the same diminishing its value. It is alleged that the injuries by the flooding of his premises was the result of the raising of the tracks of the road, and a spur built by the Texas & Pacific Railway Company, all preventing the ordinary flow of water in time of rains, no culverts being provided for the escape of the water, so causing the overflow of plaintiff's premises and the injuries alleged. It is alleged "that to within the past two years, the maintenance and operation of the said two lines of railway at and near plaintiff's premises, and the maintenance of said crossing was without serious injury or damage to plaintiff's premises or to his family; but at various and sundry dates within two years past, which dates plaintiff is unable to give with greater precision, the defendant, the Texas & Pacific Railway Company, has, by various stages and steps, gradually raised its roadbed to a distance of several inches, to wit, about eighteen inches above the level theretofore maintained by it and has erected a spur from its main track along its right of way from a point near where its track crosses Elm street, a few hundred feet north of plaintiff's premises, whereby the water flowing on Main street and other surface water, is diverted from its natural channels and gathered and held in between the track and spur, and carried southward to the crossings of said lines of the two defendants, and thence thrown onto plaintiff's premises, for the reason that there is no culvert at said crossing, whereby the water may escape, or if there be any water [way] at all, it is totally inadequate

for the escape of the water that flows to the crossing; and both defendants at and near the said point of intersection have filled in their roadbeds with solid rock and dirt ballast, leaving nowhere, in the neighborhood of plaintiff's premises, any culverts or waterways for the escape of surface water; and defendant, the street railway, in order to get a level enabling it to cross the track of its codefendant, raised as aforesaid in front of plaintiff's premises, has likewise continued to raise the level of its roadbed and track to correspond with the level of the track of the Texas & Pacific Railway Company, so that both tracks at and near the residence of plaintiff are raised far above all the surrounding ground, and far higher than plaintiff's premises, and far above the natural lay of the ground thereabouts." The petition then reiterates the averment of the absence of culverts or other drainage as to both railways, so that there is no way for the escape of the railfall, and it is alleged that the drainage of waterfall from a considerable portion of the adjacent territory is drained and conducted to said crossing, and the water backs and flows over the track of the street railway at a little distance back of the crossing towards plaintiff's home, where the track is lower that at the crossing, "and such back water, when thus diverted from its natural channel, is caused to overflow plaintiff's premises and is backed upon the same, and when heavy rains fall said water is thus caused to stand for weeks in plaintiff's yard, about and under his house, and overflows all his premises; and at the intersection of said lines a stagnant pool is formed at and near plaintiff's house, and in the street in front thereof." The resulting injury and damages are then set out by items, including sickness of family and expenses incurred thereby.

The defendant, Texas & Pacific Railway Company, in first amended original answer, pleaded to the jurisdiction, stating that on December 2, 1898, Maddox filed suit against both defendants on the same cause of action now set up; that that suit was, in January, 1899, removed to the United States Circuit Court for the Northern District of Texas, where trial was had in May, 1899, and after hearing of the evidence, argument of counsel, and while the court was proceeding to charge the jury, plaintiff took a nonsuit and judgment was rendered in favor of defendants for costs; and plaintiff thereafter, in July, 1899, filed this suit and is prosecuting the same against the same defendants on the same cause of action, whereby it is claimed that the court is without jurisdiction.

The Texas & Pacific Railway Company then filed exceptions to the petition, a general denial, plea of limitation of two years; and, specially answering, that appellant had built its road through that part of the city of Dallas long prior to appellee's locating upon the property alleged to be damaged; that the property was low and had always been subject to overflow; that its roadbed was originally built higher than the surrounding land, and that water would naturally flow across the track of appellant from land east of appellee's house "if the roadbed in its present position as to height was not then higher, and that the height of the roadbed was in fact a protection to his property; that if the water stood

on plaintiff's property, it was the natural rainfall and drainage from adjoining premises; that he was negligent in not filling in his lot and properly draining the same, which caused the injury complained of, if any occurred.

Defendant railway company also set up that plaintiff had parted with his property, and was not the owner, and had not been since the 24th day of February, 1899.

The answer of the other defendant was the same as that of the Texas & Pacific Railway Company.

Plaintiff replied that, if any conveyance was ever made to the premises, it was in fact a mortgage to secure purchase money due on the property.

The trial court on the 27th of February, 1900, overruled the plea to the jurisdiction, overruled defendants' general demurrer and special exceptions, and verdict was returned: "We the jury find for plaintiff against the Texas & Pacific Railway Company in the sum of $500. We find for the Dallas Consolidated Electric Street Railway." Judgment was entered according to the verdict, and motion for new trial being overruled, defendant, the Texas & Pacific Railway Company, appealed.

*Findings of Fact.*—We find the facts proven on the trial as follows: Within two years prior to the institution of this suit, the Texas & Pacific Railway Company raised its railroad bed passing near plaintiff's premises, causing the water from rainfalls to collect and overflow the premises of plaintiff, as alleged. The construction and maintenance of the spur mentioned in the petition, as alleged, was the main cause of the accumulation of the water. The street railway was also constructed, as shown in the petition, and aided in the obstruction of the of the water, but its erection to such height was required in order to become level with the track of the other road to allow its cars to cross the same. It is shown that the acts of both companies caused the overflow, as alleged; but that the raising of the track of the appellant made it necessary to raise the road of the street car company, in order to pass over the other road. Culverts and waterways were not put in by either road to carry off the water that would accumulate from rainfall.

It was proven that plaintiff was injured to the amount of damages found by the jury, and it was shown that as a consequence of the overflowing of the premises and the standing water near thereto, caused as alleged, the sickness in plaintiff's family was produced as set up, and the expenses as alleged for medicines and loss of services.

The amount of the verdict is fully warranted by the testimony.

The water from rainfall did not overflow the premises of plaintiff until the spur was built by the defendant, and the raising of defendant's embankments on the main line and the spur was the primary cause of the injury, and, if it had not been done, it is not shown that the injury would have been sustained. In order to use the street railway, it had to be raised to the level of the defendant's road. Defendant's main track was raised in 1898, and the spur prior to the overflow

complained of, prior to which there was no flooding of plaintiff's premises.

Plaintiff went to considerable expense to raise ·the level of his lot and fill it in, but the water flooding it, caused by the embankments as. stated, washed it away. He thus put on his lot 160 loads of gravel and sand.

*Opinion.*—1. There was no error in the State court's assuming jurisdiction and proceeding to judgment in the case. Plaintiff took a nonsuit in the United States Court in the first suit before final action by that court, as he had the right to do, and thus ended the jurisdiction of that court. An action was then brought in the State court by new suit. There being no attempt to remove the new suit to the Federal court, the State court had jurisdiction, and its judgment is not affected by the proceedings in the first suit.

2. Appellant complains of the ruling of the trial court in refusing to sustain its special exception number 3, which objects to the petition upon the ground that there was no averment that drains existed before the raising of the track, and that it was not alleged that the natural drainage was away from plaintiff's property, and that it was not alleged that the natural drainage from plaintiff's property before the raising of the track was in the direction of appellant's road, and the raising of the track caused it to change its course.

It is sufficiently alleged that the raising of the track caused the accumulation of the water, which required it to pass out so as to flood plaintiff's premises. It was not necessary to state other facts, as insisted by appellant. If it were true that no drains existed before the raising of the road, defendant had the right to show it in defense to the action.

3. It was not necessary to plead more particularly as to the dates of the floods, as the petition states plaintiff could not be more particular as to time, it being shown that the injuries were not barred by the statute of limitation.

The damages resulting from sickness in plaintiff's family was stated as a consequence of the injury and greater particularity as to dates was not required, such as would be required in a suit on an itemized account for debt. Nor was it necessary to name each member of the family made sick by the stagnant water, the averment including all the children. The wife was particularly named, on whose account expenses were incurred and loss of services stated.

4. It was not error to permit witnesses to testify as to sickness in the family, a sufficient predicate having been made in the petition for the proof of damages resulting therefrom.

5. No injury rsulted to defendant from the assumption in the petition, if it is assumed, that the injuries stated were permanent, as the court, after hearing the evidence, ruled that the injuries were temporary

in character. · Defendant was not prejudiced or injured by the ruling on the exception to the petition.

6. No reason is shown why the court erred in permitting Eli Pratley to testify as to damages to the realty, and the value before and after the overflows. He was familiar with the facts of damages and the cause and was not called as an expert, nor was expert evidence required. He and Maddox could testify as to the value of the premises before and after floods, thus showing ·the injury done to the property as such, which was the measure of damages on that item of complaint.

7. The charge of the court practically withdrew the issue of permanent damages to the premises in submitting only the questions of temporary injury. There is no merit in the assignment of error that the court erred in failing to instruct the jury that plaintiff was not entitled to recover for permanent injuries to the property. The petition states a case on the facts making a sufficient basis for the evidence and damages,—the court controlling the question as to whether the injuries were or were not permanent, giving the correct rule as to the measure of damages. This was correct and proper. The petition did not conclusively determine the question of permanent injuries, but only the amount of damage, which could not be exceeded in the verdict.

We find no error in the ·matter complained of, nor in the kindred questions presented in the next two succeeding assignments of error. It was right to withdraw from the consideration of the jury a measure of damages not applicable to the facts; and especially as such withdrawal accords with appellant's views of the question as shown by assignments of error, it can not complain. It is not insisted that any issue of damages was submitted by the court that was not presented in the petition. We can not say that there was error to submit the real issue as to the character of the injuries and damages sustained thereby.

8. It is true that no damages were claimed on account of the sickness of Mrs. Wagley, the mother-in-law of plaintiff, living with his family, and it is equally true that none were recovered; but this would not be ground for excluding her testimony as to how her health was affected by the causes producing sickness in the family. It was legitimate to allow proof of how she was affected, and also proof of the effect upon the health of the neighborhood. Evidently the jury allowed no damages on account of such matters, as the verdict is for an amount much less than the facts might have warranted on the real case before the court.

9. There was no error in the refusal of the court to peremptorily instruct the jury at request of defendant to find for the defendant. Each joint tort feasor is liable for the consequences of their acts.

10. The court was correct in refusing to instruct the jury, at request of the defendant, to find for defendant, if they should find that at the time of the commencement of the suit plaintiff had parted with the title to the property in question. Defendant offered and read in

·evidence a deed from Maddox, plaintiff, and wife to one Wilson, dated February 24, 1899, the consideration recited being $1500, conveying the property alleged to be injured to Wilson,—a warranty deed duly ·executed by both Maddox and his wife. Maddox testified that the deed was given to secure a loan for borrowed money to pay off a lien on the lot.

On this subject the court instructed the jury that if the instrument in the form of a deed was intended by the parties as an absolute sale .and conveyance, then plaintiff could not recover in this suit; but if it was made only for the purpose of securing money to pay off a lien on the premises, and was not intended as an absolute sale, it would be im-material and should be disregarded.

The charge asked by defendant left the question to the jury, both of law and fact, to determine whether title to the fee passed by the deed; the court's charge submitted the issue correctly as to facts which would make it a deed or a mortgage. Evidently the jury found the facts mak-ing the instrument a mortgage. If the instrument was intended to be a mortgage only, then plaintiff was not thereby prevented from a re-·covery for damages to the land. We note that the instrument was made February 24, 1899. This suit was filed July 19, 1899, for in-juries to the land occurring within two years prior thereto, and other injuries, not connected with or dependent upon plaintiff's title to the land. We are not prepared to hold that the injuries to the land prior to the deed and not barred by limitation, if it were in fact an absolute ·conveyance, would defeat a recovery in toto. Certainly it would not ·defeat a recovery for other injuries claimed, not dependent on the abso-lute title, occasioned before the alleged sale. So the court, in no event, ·should have given the requested charge.

The charge given on the subject allowing a recovery in certain con-tingencies was the law, and it was not objected to. The assignment on the question is not sustained.

11. We do not believe that if it be true that the defendant con-·structed its roadbed before plaintiff acquired title to the land he would be debarred of a recovery for injuries thereto after his purchase aris-ing from defects existing at a time before his purchase. The cause of action would arise only at the time of the injury, and the only question as to injury to the realty is, was plaintiff the owner at that time? De-fendant could not acquire a permanent right to injure the property as against purchasers acquiring it subsequent to the construction of the embankments. When the injury is inflicted the cause of action arises in favor of the owner at that time. So there was no error in failing or refusing to charge, upon request, that plaintiff could not recover if the embankments were *constructed* before plaintiff acquired the title. Mad-dox bought the property about ten years before the trial, and he testified, and we find it to be true, that the water never interfered with his prop-erty, or the use of it, until the spur was built. The recovery was lim-ited to injuries to the land within two years prior to the suit.

12. We find no error in the failure of the court to charge the jury to find for defendant, if the city of Dallas, or those acting by its authority, built the embankment that was the proximate cause of the injury. That the raising of defendant's embankments was a cause of the injury, and that if such embankments had not been so constructed and raised, the property would not have been injured, is without controversy. Because the city road was also liable would not excuse the defendant. The city way had to be raised to cross the defendant's road. It would not be correct to instruct the jury, upon request or otherwise, in such case that defendant would not be liable. It might be said that the elevation of defendant's road was the first cause of the injury, requiring other roads crossing it to be elevated to the same level. Appellant's track was raised in 1898 and the spur in 1897, and prior to these events there was no overflow of plaintiff's premises.

13. Appellant can not complain that the court erred in instructing the jury to find for the Electric Street Railway Company, which was at most a joint tort feasor with defendant. Each would be liable for the injuries caused by their concurrent acts.

14. Plaintiff was not bound to raise his land above the level of the overflow to prevent injury to it. He did expend considerable money in attempting to fill in his land, but the water washed it away—the sand and gravel—160 loads, the evidence shows.

15. There was no error in refusing a new trial. There was a conflict in the testimony as to when the spur was built by defendant that caused the overflow. The plaintiff and his witness testified that the spur was built prior to the overflows, and defendant's witness testified that it was built after the overflows complained of. It is not the province of this court to decide which testimony was true and which false, or to say that the verdict should have been different, there being evidence to support it.

We find no error as assigned. The judgment is affirmed.

*Affirmed.*

Writ of error refused.