**WEST TEXAS HOTEL CO. v. CITY OF EL PASO et al.**

No. 3186.

Court of Civil Appeals of Texas. El Paso.

May 2, 1935.

Rehearing Denied May 23, 1935.

R. A. D. Morton and H. D. Springer, both of El Paso, for appellant.

J. H. McBroom, City Atty., and Frank B. Clayton and Jos. J. Roybal, Asst. City Attys., all of El Paso, for appellees.

WALTHALL, Justice.

This suit was brought by appellant against appellees to cancel the raise in appellant's taxes on the property involved in the city of El Paso (Hotel Hussmann)

and to have the order of the city board of equalization raising the value of said property declared void, and to require the city of El Paso and its collector to accept the amount of taxes tendered in full of taxes due for the year 1933, and to enjoin appellees, the city of El Paso, and the collector of taxes, from collecting the increase in taxes complained of.

Appellees accept the statement of the nature and result of the suit as set out in appellant's brief as substantially correct. We adopt the statement as our own. It is as follows:

The appellant, as plaintiff, filed this suit in the Forty-First district court of El Paso county, on February 22, 1934, against the city of El Paso and its mayor and four aldermen, constituting its city council and board of equalization, and against J. E. Anderson, its tax assessor and collector, seeking relief against 1933 taxes' alleged to have been illegally assessed against plaintiff's property known as Hotel Hussmann, in the city of El Paso, Tex., and the furnishings therein.

The plaintiff, by its amended petition, alleged in brief as follows: That said city is governed by a city council composed of the mayor and four aldermen, and has taxing power similar to that provided for in the General Statutes, and that the mayor and aldermen constitute the board of equalization, and that a quorum shall consist of three, the powers of said board being practically identical with the powers possessed by commissioners' courts sitting as boards of equalization. That property owners are required to render property for taxation, and if any raise is made, notice shall be given and a hearing afforded.

That plaintiff was the owner on March 1, 1933, the date on which property is assessed, of the Hotel Hussmann property in said city, and of the furnishings therein, and that the forms provided for rendition had three columns, one headed "100% Valuation," the next, "Assessed Valuation," and the third, "Assessed Valuation as Fixed by Board of Equalization." That for some years prior to 1933 it had uniformly been the custom of said city to assess and charge taxes on 70 per cent. of the 100 per cent. valuation, and that such custom was in force when plaintiff, on June 12, 1933, made its rendition showing on said form in the column "100% Valuation," $400,000; and under "Assessed Valuation" 70 per cent. thereof, or $280,000, and as to furnishings showing on said form under the 100 per cent. valuation, $65,000, and under the Assessed Valuation heading, $45,500. And that said form so filled in was accepted by the city assessor and placed among the records, and that when the board of equalization met, notice was given to plaintiff to appear and show cause why the land and building should not be assessed at $544,130, instead of $280,000, but that no notice was given respecting any raise in the personal property. That plaintiff's agents appeared before the board in response to said notice, at the time and place set, and that only two members, to wit, Mr. Galbraith and Mr. Allen, were present, but were undertaking to act as the board. That they refused a hearing and denied plaintiff any relief on account of a plan adopted at a prior meeting, at which plaintiff was not present nor represented, to the effect that it was necessary in order to enable the city to raise revenue to meet its obligations that valuations for taxable properties be kept on the 1932 valuation basis, which was a basis arrived at on a theory or system set up by so-called tax experts, which was arbitrary and capricious, and wholly disregarded market values, and hence was illegal, and that no legal action of the board making a raise was had. And that plaintiff received notice in December, 1933, to the effect that plaintiff's alleged taxes for 1933 on its said property were $13,592.92, being $2.25 per $100 of assessed valuation on $544,130 as to land and building, and $60,000 as to furnishings.

That, calculated under plaintiff's rendition, the taxes would be $6,300 as to the land and building, and $1,023.75 as to the furnishings, and plaintiff had tendered said sum before suing, but same was refused, and it still tenders same in full of its said taxes.

It was alleged that its property was rendered at its fair market value and for more than the property could have been sold for on March 1, 1933, and that said figures placed by the board are grossly excessive, and it would have sold at the figures stated in its rendition and that the raise was illegal and void because of arbitrary and capricious attitude of the board, if two members can be a board, or if not this, because no legal action of the board was had in making the raise, and because the system or theory followed by

the city was illegal in that market value or intrinsic value was disregarded and valuations placed on the property were such as to raise revenue and defray the city's expenses and obligations, and was void, further, because said valuations were arbitrarily and illegally arrived at by said board because in 1925 the city employed Stoner & Pollack, alleged tax valuation experts, to set up a system or theory of valuations; and again in 1929 employed another alleged expert, George Ehrenborg, of Dallas, to make a similar set-up, and that both of said alleged experts followed a scheme of obtaining the hurried opinion of several real estate men as to unit value, and then, following out some arbitrary or unreasonable theory or system, assigned different values to different parts of the same lot, and disregarded rental history or anything but said scheme, and as to improvements, the scheme followed was to ascertain the number of square feet of floor space in the improvement and multiply that by the alleged cost of replacement and then fix the value at such figure without regard to anything else, and that they made card index reports to the city, and especially as to plaintiff's property, and that the city has constantly since followed said scheme and did so in arriving at the $544,130 value placed on plaintiff's property now in question, and regardless of its market or intrinsic value.

That for a number of years prior to 1933 the city had uniformly considered 70 per cent. of the experts' values as the assessed valuation on which taxes were charged, and as to 1932 taxes a blanket reduction of 10 per cent. on the experts' figures was granted. That, under the scheme of the said experts, the 100 per cent. value of the ground was put at $288,720 and the building at $574,950, a total of $863,670. Seventy per cent. of that is $604,570, and taking the 10 per cent. reduction, would make $544,113, or practically the figure to which the attempt was made to raise it.

It was alleged, further, that plaintiff's said taxes were illegally assessed because the city followed such scheme or theory and without regard to the market value or intrinsic value, and, further, that the board acted on a misconception of its duty, and in that it conceived its duty to be merely to equalize taxes rather than to assess property at its fair market value or intrinsic value; and, further, because the principal consideration in actuating the board to maintain the system of values was to raise sufficient revenue to meet the city's obligations in disregard of the property values.

That in September, 1933, after the rendition had been made and after the time for renditions had expired, the city passed a resolution that all property should be assessed on the 100 per cent. valuation, but that such resolution was void because made after the time for rendition had closed, and directly contrary to the uniform custom of a number of years' standing, that property was assessed for taxes on a 70 per cent. basis.

It was alleged also that no notice as to any raise on the furnishings was given plaintiff, and for that additional reason the raise was void.

It was prayed that the raise in taxes be canceled, and that the city and its collector be required to accept the $7,323.75 tendered in full of 1933 taxes.

The defendant filed general denial and answered further admitting certain allegations in plaintiff's petition, and denied that the raise was illegal or void, and admitted the employment of the alleged tax experts, alleging that they made surveys, and alleging that the valuation placed on plaintiff's property by the experts had been twice voluntarily reduced by the board, and admitted paragraph 4-d of plaintiff's petition regarding lack of notice as to the furnishings, and also paragraph 5, regarding tender.

The city also filed cross-action seeking recovery of its taxes on the land and building and also on the furnishings, and praying for foreclosure, interest, penalty, and costs.

Plaintiff filed supplemental petition and answer to the cross-action containing general denial, and alleging that its representatives appeared at the time and place appointed by the notice to appear, but that the alleged raise was made by the board when it was not present and not even notified to be present, and therefore void, and reasserting the grounds of illegality of the tax set up in its original petition, and pleading the allegations of said petition in bar of the city's cross-action.

The case was submitted to a jury on six special issues after plaintiff's motion for peremptory instruction was refused.

The original charge of the court was misplaced at the time of making the transcript, and it was agreed that it should be considered as substituted by referring to the charge as copied in the judgment. However, since that time the charge has been found, and appellant's motion for certiorari to bring it up, as well as plaintiff's charge E, has been granted by this court, and such instruments are now on file herein.

The court undertook to define market value and intrinsic value and then submitted six issues, briefly stated, inquiring as follows:

"1. Whether there was a fair cash market value for the land and building? This the jury answered, 'No.'

"2. What was such market value? Which the jury did not answer.

"3. What was the intrinsic value? Which the jury answered '$544,100.00.'

"4. Whether the Board in fixing the assessment ignored reasonable market value? Which the jury did not answer.

"5. Whether the Board in fixing the value determined the amount of money to be raised by taxation and fixed the value for such properties without regard to market value or intrinsic value? Which the jury answered, 'No.'

"6. Whether in fixing the value the Board followed the tax experts' system without regard to market value or intrinsic value? Which the jury answered, 'No.'"

Other issues and charges requested by plaintiff were refused and exception taken.

The charge was also fully excepted to for various reasons, as will appear of record.

Judgment was entered October 17, 1934, that plaintiff take nothing by its suit, and that the city not recover as to its taxes on the furnishings because the tender made by plaintiff thereon of $1,023.75 had been accepted in open court and receipt issued, but that the city recover $13,427.81 for taxes, penalty, and interest, plus $671.39 as attorney's fee, a total of $14,099.20, with interest at 10 per cent. per annum, and costs of suit as to its taxes on the land and building and ordered foreclosure of its lien against the real estate.

Amended motion for new trial was duly filed and considered by the court and overruled, and notice of appeal given, and in due time appeal was perfected and the transcript and statement of facts filed herein.

## Opinion.

■ Appellant complains of the definition given by the court of market value, as being erroneous, improper, and imposes a greater burden on appellant than the law does; and error in refusing to properly define market value as in a requested charge.

The charge given is as follows: " 'Market value' or 'fair market value' may be defined as the amount of money that a person desiring to sell, but not bound to do so, could, within a reasonable time procure for such property from a person who desires and is able to buy, but is not bound to purchase the property. It is the amount that could be obtained at private sale and not at a forced or auction sale. The terms 'cash market' and 'fair market' value are equivalent to each other."

As said by appellant in its argument, the question of what is a proper definition of "market value" as applied to land has given rise to much discussion by the courts. The effort here by the trial court and by this court is to state the value of the real property, the Hotel Hussmann, at which the assessment value of the property should be fixed for the purpose of taxation for city taxes.

Article 137 of the City Charter provides that all property subject to taxation as provided by the general laws of the state shall be subject to taxation by the city, and the definition of property and terms as defined by the general laws of the state under the head of taxation shall apply to the taxation of this city; that section of the City Charter makes it the duty of the owner to render the real property in the manner prescribed by the general laws of the state when applicable. Article 148 of the City Charter makes it the duty of the city assessor to see that the property is rendered "at a fair market value," and, after hearing the evidence as to the value, the city board of equalization shall fix such value at the "proper value," "a proper figure." The general laws as applied to cities, towns, and villages, require the owner to hand to the assessor a sworn inventory of the property, but does not require the owner to state its value. Article 1050 of the state statute (Rev. St. 1925) applying to cities, towns, and villages, makes it the duty of boards of equalization, after hearing the evidence, to raise or lower the value of property "to its proper value," "to a proper figure," using both terms. It will be

observed that article 1050, as it now reads, omits the words "fair" and "market" from the law as it formerly read, article 947 (Rev. St. 1911).

Now, turning to articles 7211 and 7212, applying, respectively, to "equalization of assessments" and "boards may .equalize" property for taxation for the state and counties, the first article (7211) provides that if the assessor is satisfied that the property is correctly valued "according to the reasonable cash market value of such property on the market at the time of its rendition, he shall list the same accordingly." If the assessor is satisfied that the value is "below the reasonable cash market value," the assessor in that event places on the rendition "an amount equal to the reasonable cash market value of the property," and if the property shall be found to have no market value by such office, then at such sum as said officer shall deem the intrinsic value of the property." Then if the owner or person listing the property is not satisfied with the value placed on the property by the assessor, the matter of valuation goes before the commissioners' court for valuation. That court hears evidence and "determines the true value of such property" as of the time stated. In determining the value, the court "takes into consideration what said property could have been sold for any time within six months next before the first day of January of the year for which the property is rendered." The next article (7212) makes it the duty of the board of equalization to supervise the assessment, and if not satisfied that the valuation is "not in accordance with the laws of the State," then to increase or diminish and fix a "proper valuation thereto, as provided in the preceding article." That article, as in the preceding one, provides for the hearing of the evidence, and after the evidence is heard, the court fixes "the value of such property in accordance with the evidence so introduced and as provided for in the preceding article"; the article then concludes with the statement, "and their action in such case or cases shall be final."

We have said this much in order to state the various expressions of value used in the City Charter, the statute as applied to taxation in cities, towns, and villages, and the statute applying to taxation for the state and counties.

Appellant, referring to the city board of equalization in fixing the value of property for taxation, pleaded that "the Board shall have powers practically identical with the powers possessed ·by the Commissioners' Courts sitting as a Board of Equalization, and none other, and it is made the duty of said Board in Section 148 (of the City Charter) to see that all property is rendered at the fair market value."

In the charge the court defined "market value" or "fair market value," and, at the conclusion of the definition and in an added sentence, said, the terms "cash market" and "fair market value" are equivalent to each other.

We have concluded that the use of the term "cash market" instead of "market value" in the connection in which it is used, in stating the assessment value of real property for taxation, does not constitute reversible error. To be taxable, the property must have a present cash value, and that value must be expressed in terms of money. Our courts have said that "market value," "fair market value," "cash market value," and "fair cash market value," are synonymous terms. McInnis v. Brown County Water Imp. Dist. (Tex. Civ. App.) 41 S.W.(2d) 741 (writ refused); Fort Worth & D. N. Ry. Co. v. Sugg (Tex. Civ. App.) 68 S.W.(2d) 570; McInnis v. Brown County Water Imp. Dist. (Tex. Civ. App.) 45 S.W.(2d) 1118. For real property to have a uniform value for taxation for all purposes, state, county, cities, towns, villages, and schools, it would be well to have a uniform expression or term in which to express that value. For state and county purposes, the term used in the statute to express that value is "reasonable cash market value."

In its answer, appellees pleaded that the board of equalization, in the absence of a market value, placed the valuation of the property at its actual intrinsic value, honestly and fairly, and in good faith. In submitting the case to the jury, the court defined to jury the term "real or intrinsic value" as follows: "The real or intrinsic value of property is represented by that sum of money which is a fair equivalent of such property. The proper determination of such real or intrinsic value of property is by the application of sound judgment and common sense in a consideration of the elements which an ordinarily prudent and intelligent business man would. consider in the ascertainment thereof. In the ascertainment thereof among the elements that may be taken into consideration is the loca-

tion, cost and character of improvements, rental history, if any, location as to future growth of the City sales of adjacent property, if any, the uses to which the property is put or of which it is reasonably susceptible."

Appellant assigns error to the definition in that it leaves the jury to speculate, that it does not confine the jury to the evidence, that it does not include all the elements to be considered in arriving at the basis of value, that it includes elements which are not proper, and in refusing to properly define intrinsic value as requested in a submitted charge.

Appellant refers us to article 7211, Rev. Civ. Stat., which appellant submits is applicable, and which makes a distinction between market and intrinsic values. That article provides, as stated above, that if such property shall be found to have no market value, by the assessor, the assessor then notes on the rendition what he deems the real or intrinsic value. The commissioners' court then hears the evidence and determines the "true value of such property." In article 7212 of the board of equalization, after hearing the evidence as to value, fixes the "market value or true value."

The statute does not otherwise define the terms used as to value.

We have concluded that neither the definition given nor the method of proof of real or intrinsic value is open to the objection made.

■ In question 1 in the charge, the court submitted to the jury to find whether "there was a fair cash market value" for the land and buildings, and in question 4 in the charge, the court submitted to jury to find whether the board of equalization, in fixing the assessment of the land and building, ignored or disregarded "the reasonable cash market value." The fourth question was to be answered only in the event question No. 1 was answered yes. Number 1 was answered "No," and No. 4 was not answered.

Appellant then objected and now submits error in the use of the word "cash" in submitting said issues, as placing a greater burden on appellant than the law does. We think there was no error in using the word "cash" in submitting the issues. In ascertaining the value of real property for taxation, such value must necessarily be a present cash value. In article 7211 the term used referring to value at which real property must be rendered uses the phrase "reason-

able cash market value," and in other places in the same article the term "market value" is used. The two terms mean the same thing.

We think proposition 4 is without merit, and in discussing other propositions have indicated our views on what is there said.

■ Some of the witnesses as to value said the real property had a market value, while other witnesses said the real property had no market value. The evidence was such as to require the submission of the issue to the jury. There is no sale or sales of real property of like kind found in the evidence showing or tending to show market value.

■ We think the evidence is sufficient to require the submission and to sustain the finding of the jury as to the real or intrinsic value of the property in the sum of $544,130. The value of the ground without the building was shown; the original cost of the building was put in evidence; the number of rooms, the rentals, the location of the building, in fact, everything that tended to show value was put in evidence. Some sixteen witnesses testified as to value. Their testimony as to whether the real property had a market value, and if so, what that value was, and what the real or intrinsic value was, differed widely, on both issues, and ranged in value from $400,000 to a value in excess of the assessed value. The jury found that the real property had no market value, and that the real or intrinsic value was $544,130. Both findings are supported by the evidence. Appellant's several contentions that these values are not supported by the evidence are not sustained by the record. It would serve no useful purpose to state the evidence of the individual witnesses.

The court refused to submit to the jury a requested charge, submitted by appellant, to find whether the board of equalization, in fixing the assessment value, acted on the theory that "such value be fixed as would produce revenue sufficient to meet the City's obligations, and regardless of fair market, or real value," at the time stated.

We have found no evidence in the record to justify the submission of that issue.

■ The court refused to submit to the jury a requested charge submitted by appellant, in effect, to find whether the board of equalization took action raising appellant's rendition after a quorum of three or more of the members afforded a hearing to appellant's representatives respecting the valua-

778

tion, and accompanied by a request to peremptorily instruct in appellant's favor.

The evidence shows that appellant's representative and its attorney, in answer to notice of the meeting of the board, went to the place of the meeting of the board at a time when a quorum of the board was not present, and for the purpose of protesting the raising of appellant's rendition. No action was taken by the members of the board then present. Appellant's representative did not again return or appear before the board. Later, when the board met, and in the absence of appellant's representatives, the board considered the matter of the raise of appellant's rendition.

Proper notice of the meeting of the board as a board of equalization was given to appellant. We think that the validity of the raise of the rendition is not affected by the failure of the taxpayer to appear before the board, after notice, and protest the raise, and give the board the opportunity to hear the evidence as to the value at which the property should be assessed.

Appellant complains that the court erred in not granting a new trial, because of improper and prejudicial argument of one of appellees' counsel before the jury.

We have carefully reviewed the argument set out in the record, and have concluded that it does not constitute reversible error. We do not think the argument was calculated to create prejudice in the minds of the jurors or to cause the rendition of an improper verdict.

The city aldermen were permitted to testify as to the value of the real property over objection that they were not real estate men, and, for that reason, they were not qualified as experts to testify as to such values.

To testify as to the value of the land and the building thereon, the aldermen need not qualify as experts. Fort Worth & D. S. P. Ry. Co. v. Judd (Tex. Civ. App.) 4 S.W. (2d) 1032 (writ dismissed); Houston L. & P. Co. v. Daily (Tex. Civ. App.) 291 S. W. 317; Texas & P. Ry. Co. v. Maddox, 26 Tex. Civ. App. 297, 63 S. W. 134 (writ refused); 19 Tex. Juris. p. 244 et seq., where the matter of the qualification of such witnesses is discussed at length.

Appellant submits fundamental error in awarding the city judgment for the penalties and interest, and because of the recent act of the Legislature, 4th Called Sess. c. 5,

p. 16, being article 7336d, of the Supplement to the Revised Civil Statutes (Vernon's Ann. Civ. St. art. 7336d), which became effective January 23, 1935, and which, by resolution of the Forty-Fourth Legislature, effective January 23, 1935 (Vernon's Ann. Civ. St. art. 7336d note), making said former act effective as of the latter date, providing that all interest and penalties which had accrued on taxes delinquent before August 1, 1934, due the state or any city, are released, provided said taxes be paid before March 15, 1935.

It is not made to appear that the taxes have been paid at any time so as to make said act and resolution effective.

We have considered all of the propositions presented, whether discussed or not, and they are overruled.

Finding no reversible error, the case is affirmed.