**BRAZOS RIVER AUTHORITY, Appellant,**

v.

**CITY OF GRAHAM, Appellee.**

No. 16082.

Court of Civil Appeals of Texas.
Fort Worth.
April 8, 1960.

Rehearing Denied May 13, 1960.

Roger Tyler and J. R. Creighton, Mineral Wells, Brown, Herman, Scott & Young, John M. Scott and William M. Brown, Fort Worth, for appellant.

Jennings & Montgomery, and Frank Jennings, Graham, for appellee.

BOYD, Justice.

The City of Graham recovered judgment against Brazos River Authority for $430,750 as damages for the claimed flooding and destruction of its water treatment plant, its sewage disposal plant, and its channel dam and reservoir as a result of the construction, maintenance and operation of Possum Kingdom Dam and Lake, which judgment subjects the tracts of land on which the named facilities are situated to an easement or servitude in favor of Brazos River Authority for future flooding of said facilities. From this judgment Brazos River Authority appeals.

Possum Kingdom Dam was constructed across the Brazos River some 55 miles downstream from the confluence of said River and Salt Creek. The dam was constructed in 1941. Its spillway is at elevation 1000 feet. The sewage disposal plant is on the west side of Salt Creek, about three miles upstream from its mouth. It was constructed in 1923 and was expanded and modernized in 1951. Its critical elevation is 1003.94. The channel dam is across Salt Creek about 1¼ miles above the disposal plant. It was built in 1908, and was raised and lengthened in 1923. The top of the dam is at elevation 1009.97. The water treatment plant is on the east side of Salt Creek, some 1,200 feet upstream from the channel dam. It was built in 1908. Its critical elevation is 1019.09.

Appellee alleged, there was evidence to show, and the jury found that the flow in the River and in Salt Creek has been so retarded by the static body of water in Possum Kingdom Lake and in the beds of the river and Salt Creek as to increase the deposit of silt in the lake and in the stream beds and cause the waters to attain increasingly higher elevations in times of flood, as a consequence of which appellee's facilities were many times flooded and their value for the purposes for which they were constructed was destroyed.

Appellee's water supply is from Lake Graham and Lake Eddleman, the former being on Salt Creek above the installations here involved, and the latter being on a tributary of Salt Creek upstream from the water treatment plant. The lakes are connected by a canal, and the water is brought from Lake Eddleman to the treatment plant through a 16-inch pipeline. The water impounded by the channel dam is used in emergencies caused by pipeline breaks, extreme periods of drought, or other catastrophies. Appellee is a growing city, and these facilities have been used to, and sometimes above, normal capacity. There was evidence showing that when backwater from Possum Kingdom Lake goes over the channel dam the water in the channel reservoir becomes unusable because it is contaminated by untreated sewage when the disposal plant is put out of operation because of its being flooded.

The jury found that the intrinsic value of the disposal plant at time of trial would be $140,000 had Possum Kingdom Dam not been constructed, maintained and operated, but now had a value of $750; that the water treatment plant would be worth $250,000 without Possum Kingdom Dam and is now worth only $1,500; and that the channel dam and reservoir would be worth $43,000 without Possum Kingdom Dam and is worth nothing now.

Article 8280—101, Sec. 2, Vernon's Ann. Civ.St., reads as follows:

"The Brazos River Conservation and Reclamation District (now Brazos River

Authority) is created as a governmental agency, a municipality, body politic and corporate, vested with all the authority as such under the Constitution and Laws of the State; and shall have and be recognized to exercise all of the powers of such governmental agency and body politic and corporate as are expressly authorized in the provisions of the Constitution, Section 59 of Article 16, for Districts created to conserve, control, and utilize to beneficial service the storm and flood waters of the rivers and streams of the State, or such powers as may be contemplated and implied by the purposes of this provision of the Constitution, and as may be conferred by General Law, and in the provisions of this Act; and shall have and be recognized to exercise all the rights and powers of an independent governmental agency, municipality, body politic and corporate to formulate any and all plans deemed essential to the operation of the District and for its administration in the control, storing, preservation and distribution to all useful purposes of the storm and flood waters of the Brazos River and its tributary streams; as such District, shall have and be recognized to exercise such authority and power of control and regulation over such storm and flood waters of the Brazos River and its tributaries as may be exercised by the State of Texas, subject to the provisions of the Constitution and the Acts of the Legislature."

Appellant's first point for reversal is that appellee's damages were caused by appellant's lawful use of Brazos River, for which appellant is not answerable in damages. Appellant says that "it has a public right to store waters in the channel of the stream for the purposes of flood control and other beneficial uses of the Brazos River and that it is under no liability for the inevitable natural consequences of the exercise of its legal right." If that proposition be correct, it would seem that no entity which undertakes by authority of law to appropriate, damage, or destroy for or apply to public use any property, would be liable for the "inevitable natural consequences" of its undertaking, because every such exertion is the exercise of a legal right.

■ Article 1, Section 17, of the Texas Constitution, Vernon's Ann.St. provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; * * *." Since there are no exceptions or limitations attached to the constitutional provision, the State itself is not exempt from its requirements. City of Amarillo v. Ware, 120 Tex. 456, 40 S.W. 2d 57; State v. Hale, 136 Tex. 29, 146 S.W.2d 731. Agencies created by the State are not exempt. Ft. Worth Improvement Dist. No. 1 v. City of Ft. Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994.

■ It is settled that one who obstructs the flow of a stream so as to make the waters flow onto and injure the lands of another is liable. City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556. The damage may result from the operation of public works as well as from their construction. Gainesville, H. & W. Ry. Co. v. Hall, 78 Tex. 169, 14 S.W. 259, 9 L.R.A. 298. So, even if, when first constructed, a dam does not injure lands some distance away, when the pond, made by the dam, fills with mud, sand, or other things, causes overflows which injure lands, the owner has a cause of action. Hidalgo County Water Improvement Dist. No. 2 v. Holderbaum, Tex.Com.App., 11 S.W.2d 506; McDaniel v. Greenville-Carolina Power Co., 95 S.C. 268, 78 S.E. 980, 6 A.L.R. 1321; Hand v. Catawba Power Co., 90 S.C. 267, 73 S.E. 187; Cline v. Baker, 118 N.C. 780, 24 S.E. 516; Kennedy v. Union Electric Co., 358 Mo. 504, 216 S.W.2d 756; Milhous v. State Highway Department, 194 S.C. 33, 8 S.E.2d 852, 128 A.L.R. 1186; Pumpelly v. Green Bay & Mississippi Canal Company, 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557; United States v. Chicago,

B. & Q. R. Co., 7 Cir., 90 F.2d 161. The first point is overruled.

Appellant's second point is that it acted under the police power in storing water in Possum Kingdom Lake and the channel of the Brazos River and its tributaries, and is not liable for indirect and consequential damages incident to such exercise of the police power.

██ ██ The shadowy boundary of the police power is the great "Serbonian bog, * * *. Where armies whole have sunk." But it is not necessary for us to become submerged in that bog. It is sufficient to show that even though the purpose for which public works are constructed and operated be to promote public welfare, health, morals, or safety, and therefore an exercise of the police power, property taken from the owner and put to such public use must be paid for. Generally, the police power regulates the use of or destroys private property because it is detrimental to the public. In such case it does not render compensation. But when private property is "taken, damaged or destroyed for or applied to public use," not because it has been used to the public's detriment, but because the new use will be beneficial to the public, compensation must be made. We have seen no authority which holds that where power is exerted to consummate an enterprise in the public interest which requires the taking or damaging of private property, there may be no compensation. Whether the power so exercised is called the police power or the power of eminent domain, it nevertheless results in a taking or damaging in the purview of the constitutional provision. 16 Tex.Jur., p. 448, sec. 159; 29 C.J.S. Eminent Domain § 6, p. 784; Nichols on Eminent Domain, vol. 1, p. 66, sec. 1.42, p. 68, sec. 1.42(1). Compensation must be made in all cases where property is "taken, damaged or destroyed for or applied to public use," the police power not being above, but being subordinate to, the Constitution. Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 12 A. L.R. 1116.

In Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 160, 67 L.Ed. 322, 28 A.L.R. 1321, the court said:

██ "The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. * * * When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States. * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

In Mugler v. State of Kansas, 123 U.S. 623, 8 S.Ct. 273, 301, 31 L.Ed. 205, we find this expression: "The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner."

Appellant's next two points are that appellee's cause of action is barred by the two-year statute of limitation if the suit is for damages, and by the ten-year statute if it is a suit for compensation for a taking.

Title 91 contains the invoked limitation statutes. Article 5517 in that Title provides that "The right of the State, all counties, incorporated cities and all school districts shall not be barred by any of the provisions of this Title, * * *." Appellee being an incorporated city, it would seem that the statutes of limitation relied upon are not applicable.

But even if the limitation statutes are operative against appellee, and if this be a suit for "damages" rather than for a "taking", the plea of the two-year statute cannot be sustained because we think it was not shown that the cause of action accrued more than two years before the filing of the suit. We do not understand that the cause of action accrued the moment the operation of the dam and lake caused an overflow of appellee's premises. This suit was filed on September 19, 1957. The first overflow caused by silt deposits was on July 1, 1953, and affected only the disposal plant, causing it to be closed about three days. The next overflow was on July 20, 1953, causing the disposal plant to be closed, and entering the channel reservoir. Beginning on October 27, 1953, another overflow closed the disposal plant for about five days. Beginning on May 15, 1954, there was an overflow which closed the disposal plant for eight days. No overflow entered or reached the water treatment plant until September 25, 1955. By far the most extensive flooding of appellee's facilities occurred between April 26, 1957, and "the first week or so of June." Appellee's city manager testified: "Q— Now, was that constant flooding or periodic flooding of the facilities? A— Well, it was almost constant. There were times when it would get down and we would attempt to get the plant back in operation and then it would come back again." The witness said that water got in the water treatment plant and in its engine room; that they could not operate the disposal plant; the sewage was not receiving any treatment; the City would not use the water from the channel reservoir because it was contaminated.

The first injurious overflow would not necessarily furnish a safe basis from which future damages could be calculated, and the cause of action would not be barred because not brought within two years from that time, when the extent and permanency of the damage could not be proved. Baker v. City of Fort Worth, 146 Tex. 600,

210 S.W.2d 564, 5 A.L.R.2d 297; Hunt v. Iowa Cent. Ry. Co., 86 Iowa 15, 52 N.W. 668, 41 Am.St.Rep. 473; City of Tulsa v. Grier, 114 Okl. 93, 243 P. 753; Ellerson Floral Co. v. Chesapeake & O. Ry. Co., 149 Va. 809, 141 S.E. 834.

In Hilton v. Duke Power Company, 4 Cir., 254 F.2d 118, 126, the court said: "It would impose an obligation too stern for the practicalities of justice to declare as a matter of law that, regardless of extent, range, topography, and other characteristics of his land, a plaintiff is always charged at the first appearance of damage with a foresight of its ultimate spread."

No issue was submitted or requested touching the defense of limitations. We cannot say that as a matter of law appellant established its allegation that appellee's cause of action was barred by the two-year statute.

Appellant says that if this is a suit for compensation for a "taking" it was barred in ten years from the completion of the dam in 1941. Had there then been a physical invasion of appellee's land, the proposition might be correct. But there was none. It is our view that no cause of action for a taking of appellee's property arose until it was flooded as a consequence of the maintenance and operation of the dam and lake. Austin & N. W. Ry. Co. v. Anderson, 79 Tex. 427, 15 S.W. 484; Powers v. City of Council Bluffs, 45 Iowa 652; McDaniel v. Greenville-Carolina Power Co., 95 S.C. 268, 78 S.E. 980, 6 A.L.R. 1321; Hilton v. Duke Power Company, 4 Cir., 254 F.2d 118.

In United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789, it was said:

"Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time. The Fifth Amendment expresses a

principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding 'causes of action'—when they are born, whether they proliferate, and when they die. * * * If suit must be brought, lest he (the owner) jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet uncertain. * * * And as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized. An owner of land flooded by the Government would not unnaturally postpone bringing a suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck."

In McDaniel v. Greenville-Carolina Power Co., 95 S.C. 268, 78 S.E. 980, 981, 6 A. L.R. 1321, the court said:

"When the dam in question was erected, the waters from the pond in no manner affected appellant's land. She * * * could not foresee that later she would suffer damage, and for that reason could not demand compensation for she then suffered no injury, and any claim made would have been conjectural and speculative on her part; * * *. Any action brought by her until her rights were injuriously affected, or her rights invaded, would have been premature, * * *."

■ Another point is that the judgment is excessive because appellee was allowed to recover the value of the sewage disposal plant on the theory that it must be abandoned and rebuilt at another location, and was then awarded the "full value" of the water treatment plant and the channel reservoir "as if the sewage disposal plant were still in existence at the same location and would continue in time of flood to pollute the City's auxiliary water supply." We do not think the judgment is susceptible to that construction.

Appellee is a growing city and needs additional water treatment facilities; the plant has been flooded as a consequence of the maintenance and operation of the dam and lake; according to expert testimony the flood hazard will increase with the years; in order to meet the growing needs of the city, appellee must either expand the present plant or abandon it and build a new one; because of the probability of recurring floods from the backwaters of Possum Kingdom Lake, three engineers testified that it was not advisable to expand and modernize the plant at its present location. Besides, appellant did not except to the pleading of damages by appellee and its objections to the charge did not embrace the present complaint.

Since it is impracticable to keep the disposal plant and the water treatment plant at their present locations, it seems that the channel reservoir is useless. There was evidence that after the disposal plant is rebuilt on higher ground, ponding of the affluent would present a sanitary and health problem equal to that created by the periodical flooding of the present plant and channel reservoir. To eliminate this hazard it would be necessary to construct a pipe line several miles in length to carry the affluent to the Brazos River portion of the lake. It being obvious that the new water treatment plant will be rebuilt on higher ground, it does not appear that it would be practicable hereafter to use the channel reservoir as an emergency water supply.

■ Error is assigned to the exclusion from evidence of a deed from appellee to appellant conveying a 3.94 acre tract of land, which deed contained a covenant purporting to release appellant from liability for damages which might result from flooding other lands of appellee. The tract conveyed by the deed did not include the lands on which the installations involved in this suit are situated. The only ma-

teriality we perceive in the proffered evidence is the purported release. The resolution of the City Council authorizing the execution of the deed did not authorize any release from liability for damaging any property not thereby conveyed. Indeed, a resolution was prepared and presented to the City Council, which, if adopted, might have amounted to such a release, but it was rejected. We cannot agree that the action of the Mayor in signing the deed containing the unauthorized release was binding or admissible in evidence. 4 McQuillin, Municipal Corporations (3rd Ed.), p. 447, sec. 13.07; 30–A Tex.Jur., p. 150, sec. 138; Arts. 1112, 1118a, Vernon's Ann. Civ.St.; City of Tyler v. Adams, Tex.Civ. App., 62 S.W. 119; Phillips v. City of Abilene, Tex.Civ.App., 195 S.W.2d 147, error refused; Penn v. City of Laredo, Tex.Civ.App., 26 S.W. 636.

The last point is that it was error to instruct the jury that in determining values they should not consider the possibility of constructing dykes or levees around the disposal and water treatment plants, it being urged that the instruction took from the consideration of the jury one of the important factors affecting the intrinsic value of the plants, and was a comment on the weight of the evidence. Appellant did not plead that the City could or should construct such levees in order to mitigate damages.

"When the defendant wishes to contend that the damage for which recovery is sought might have been prevented or minimized by the plaintiff, he must set up the defense by special averments. Accordingly, this matter must be pleaded by the defendant in confession and avoidance, and evidence of any such fact is inadmissible under a general denial." 13 Tex.Jur., p. 414, sec. 241. Moreover, it seems that a landowner is not required, at considerable expense, to protect his property from damage by another. 16 Tex.Jur., p. 549, sec. 227; City of Ft. Worth v. Howard, 3 Tex.Civ.App. 537, 22 S.W.

1059; Texas & P. Ry. Co. v. Maddox, 26 Tex.Civ.App. 297, 63 S.W. 134, error refused. This point is likewise overruled.

Finding no error, the judgment is affirmed.