BRIAN v. FREMONT IRR. CO.

No. 7050.   Decided November 21, 1947.   (186 P. 2d 588.)

See 67 C. J., Waters, sec. 1108.  Liability of irrigation district for damages, see note, 74 A. L. R., 898.  See, also, 30 Am. Jur., 638.

*J. Vernon Erickson,* of Richfield, and *Skeen, Thurman & Worsley,* of Salt Lake City, for appellant.

*N. J. Bates,* of Nephi, for respondent.

WADE, Justice.

Dolan Brian as plaintiff, the appellant herein, filed a complaint in the Sixth Judicial District of Wayne County, Utah, containing four causes of action which are identical in allegations except for dates, wherein he alleged insofar as is material herein, that the Freemont Irrigation Company, the respondent, is the owner and in control of all waters and headgates and other means of water diversion of a natural water course known as Spring Creek, which control and ownership is subject to the right of stockholders to have the water distributed to them at their pro rata shares and that he was one of such stockholders. That as such stockholder he has paid all assessments levied to enable respondent herein to discharge its duty to maintain and control Spring Creek and the waters therein, so that such waters could be diverted and apportioned to each of the stockholders according to his respective rights. That respondent has at its own expense installed and maintained all the headgates and other means of diversion of the waters which it owns and controls in Spring Creek, but refuses to install or maintain a headgate or other means of diversion at the point where the waters are diverted onto appellant's lands. That during the irrigation season, respondent has diverted and has allowed certain of its stockholders and others who are entitled to take water at points above appellant's point of diversion to divert their surplus and waste waters back into Spring Creek and that because of this and the refusal of respondent to install a headgate or other means of diversion for handling the water to which he is entitled, these surplus and waste waters which are allowed to be diverted into Spring Creek have overflowed and flooded large portions of his lands to his damage in land, crops and forage.

Respondent filed a general and special demurrer to this complaint and a motion to strike. The court sustained the general demurrer and part of the special demurrer and

overruled the motion to strike. Appellant refused to amend, whereupon the action was dismissed. From this dismissal he appeals.

But one question is presented to this court: Did the complaint state facts sufficient to constitute a cause of action?

It is appellant's contention that respondent having undertaken to control and divert the waters in Spring Creek to its various stockholders, a duty was imposed upon it to install and maintain headgates or other means of control so that the waters would not flood his lands, ■ he also being a stockholder. He contends this is especially so since he has paid all assessments levied, along with the other stockholders, and yet this duty was discharged by respondent for the benefit of the lands of all stockholders above appellant's point of diversion but is refused for the benefit of his lands and this failure has been the direct cause of the damage to his lands. As authority for his assertion that respondent upon undertaking to control and divert water to its stockholders assumed the obligation to do such acts as would so control the waters in this creek so as to prevent it from flooding his lands, appellant cites *Chipman* v. *American Fork City et al.*, 46 Utah 134, 142 P. 1103. In that case the defendants had built an artificial ditch to carry the waste waters. They had regulated, controlled and repaired this ditch and it was from their failure to keep this artificial ditch free from obstructions that the overflow of waters which damaged plaintiff's lands was caused. The court below had entered a judgment of nonsuit against the plaintiff. This court held in that case that such a judgment was erroneous where it was proved that there was a duty on the part of defendants to repair the irrigation ditch. In the instant case it is not alleged that there devolved upon respondent a duty to keep in repair the natural channel from which it diverted the water to its stockholders nor are there facts alleged from which this duty could be found. It is merely alleged that the respondent owned and controlled all of the waters which ran through

this natural water course and that it constructed, controlled and maintained its headgates and other means of diversion of these waters. Had appellant alleged some act of respondent which caused the natural channel to become burdened with a much greater amount of water than would naturally drain or be in it, and that this excessive water was the cause of the damage to his lands he might have stated a cause of action. Such appears to be the purport of *Larimer & Weld Irr. Co.* v. *Walker,* 65 Colo. 320, 176 P. 282, and *Blaine County Inv. Co.* v. *Mays,* 49 Idaho 766, 291 P. 1055, cited by appellant. In both of the above cases natural channels were used for the conveyance of water. In *Larimer & Weld Irr. Co.* v. *Walker,* the defendants had caused water to be stored in reservoirs and then had turned these stored waters down a natural channel at the same time, thus raising the stream above the capacity of the channel to hold and causing the water to overflow the banks and damage the plaintiff's land. In *Blaine County Inv. Co.* v. *Mays,* the defendant diverted the water at a place and in such a manner as to cause the natural channel through which the water was being carried to be excessively filled with silt, sand and gravel, thus causing plaintiff's land to be overflowed. However, in the instant case, appellant did not allege that the means used by respondent in controlling and diverting its waters which flowed through the natural channel caused such channel to become burdened with more water than would otherwise be there or that it obstructed the channel so that waters were caused to overflow the bank. Appellant only alleged that respondent diverted and permitted others to divert portions of surplus and waste waters into Spring Creek above appellant's point of diversion and because of this and the failure and refusal of respondent to install headgates or other means of diversion for controlling and handling the water to which he is entitled the surplus waters which were diverted into Spring Creek have overflowed and flooded his land.

Utah is one of the arid states and the conservation of water is of the utmost importance to the public welfare. To

waste water is to injure that welfare, and it is therefore the duty of the user of water to return surplus or waste water into the stream from which it was taken so that further use can be made by others. See Kinney on Irrigation and Water Rights, 2d Ed., Sec. 912, pages 1614-1616. Furthermore the natural channel serves as the natural drainage for the waters in the area. Appellant's allegation therefore that respondent returned and allowed others to return waste water to its natural channel, could not, in the absence of an allegation of negligence in the manner of so returning the water, entitle him to any redress against respondent for doing that which it should do.

As to the defendant's failure to install and maintain a headgate at plaintiff's diversion point the complaint alleges:

"5. That at all times during its control and ownership of said waters of Spring Creek, the defendant corporation has, at its own expense, constructed, installed and maintained, all of the headgates and other means of diversion in the main channel of said Spring Creek, down to a point located approximately due East of the northeast corner of said town of Loa, but that the defendant corporation has refused, and does now refuse, to construct, install or maintain any control, headgate or other means of diversion at the point where said waters are diverted from said Spring Creek to plaintiff's said lands as aforesaid."

By this allegation plaintiff attempts to establish a duty on the part of the corporate defendant to install and maintain a headgate for the purpose of diverting plaintiff's waters onto his lands. This duty is based on the fact that the corporation having installed such headgates at the diversion points of other stockholders must do the same for plaintiff. The allegation is that such defendant

"has constructed, installed and maintained, all of the headgates and *other means of diversion* in the main channel of said Spring Creek."

There is no allegation that it has constructed headgates or other equipment for the purpose of preventing the waters of Spring Creek from being diverted onto the adjoining lands when it was not wanted there. Then in paragraph 6 it is alleged:

"6. That for many years last past, and particularly during the irrigation season of 1942, the defendant corporation, at frequent intervals during said irrigation seasons has diverted, and has permitted certain of its stockholders and users who are entitled to take water at points located above plaintiff's point of diversion, to divert portions of the surplus and waste water from the lands of said upper stockholders and users into said Spring Creek and above plaintiff's said point of diversion, and that by reason thereof and of the failure and refusal of the defendant corporation to construct, install and maintain proper controls, headgates and other means of diversion for controlling and handling the waters to which plaintiff has been and now is entitled, said surplus and waste waters so diverted into said Spring Creek by the defendant corporation and by said upper stockholders and users, as aforesaid, have overflowed and flooded large portions of plaintiff's said lands, causing plaintiff to suffer frequent and repeated damage to his said lands, crops and forage."

This paragraph, while still complaining that defendant has failed to install "headgates and other means of diversion for controlling and handling the waters to which plaintiff has been and now is entitled," proceeds to allege that the surplus waters so diverted into Spring Creek have overflowed and flooded large portions of plaintiff's lands to his damage. It does not appear from this pleading how the construction of a headgate and other means of diversion and controlling and handling the waters which plaintiff is entitled to use on his lands, could affect or prevent the surplus and waste waters which plaintiff is not entitled to use and does not want on his lands from flooding and damaging them. While there is a general hint that plaintiff claims that defendant owes him a duty to construct a headgate and other means of preventing the waste and surplus waters from flowing out of Spring Creek onto his lands, there is no allegation which supports such a claim.

He does not allege that this overflow is caused by the negligent construction by respondent of the intake or laterals or diversion works conveying the waters to his land. His allegations amount to no more than that there was more water in the natural channel than the channel could accommodate and that his lands which were adjacent to it were therefore overflowed, and that it was the

duty of the respondent to build headgates or other means of diversion or control to prevent this because he is a stockholder in the respondent company. His rights with respondent as such stockholder are contractual. The company was organized to distribute waters to stockholders according to the pro-rata shares. It is not alleged that respondent contracted to keep waters which were in a natural stream from overflowing its banks and damaging its stockholders' lands. There being no obligation on the part of respondent to do so, and it not being alleged that the means respondent used in distributing its water were inadequate, improper or done in a negligent manner so that such acts caused the flooding, the court did not err in sustaining the general demurrer to appellant's complaint.

Affirmed. Costs to respondent.

McDONOUGH, C. J., and PRATT, WOLFE, and LATIMER, JJ., concur.