Dee Jay BIGLER and Carol Bigler, his wife, Plaintiffs and Respondents,

v.

MAPLETON IRRIGATION CANAL COMPANY and John Does I, II and III, Defendants and Appellants.

No. 18256.

Supreme Court of Utah.

Aug. 16, 1983.

Michael L. Deamer, Salt Lake City, for defendants and appellants.

Richard B. Johnson, Provo, for plaintiffs and respondents.

HOWE, Justice:

Defendant Mapleton Irrigation Canal Company appeals from a judgment entered on a special jury verdict in favor of the plaintiffs, Dee Jay Bigler and Carol Bigler, his wife, for damages resulting from the flooding of their property on August 25, 1979.

The Canal Company is a non-profit corporation which delivers to plaintiffs' property water of the Strawberry Canal which carries a maximum of 90 second feet of water and flows 12 months of the year. From that canal water is diverted into a lateral known as Fullmer Ditch through a headgate under lock and exclusive control of the Canal Company, operated by its watermas-

ter, "Doc Snow." The Fullmer Ditch normally carries 6 second feet of water, but on the date of the flooding was carrying 12 second feet. A branch ditch of the Fullmer Ditch, controlled by a concrete headgate, serves plaintiffs and 9 other property owners. Plaintiffs are the ninth users down the branch ditch which dead-ends at the next property. There is no water in that branch ditch unless the 10 owners are scheduled for irrigation turns. This occurs at intervals of approximately 10 days to 3 weeks.

In 1979 plaintiffs had occupied their home in Mapleton for 12 years and during that time had irrigated their .97 acre parcel of land with water provided by the Canal Company. Doc Snow had been the Canal Company's watermaster for 14 years, and in all of those years no water ever entered through the concrete headgate to this branch ditch except after notice to the owners that the water was coming down. The watermaster notified the first owner, who in turn when his allotted time for irrigation was up, would send word to the second and so on down to the tenth. At the end of each irrigation cycle, the water would be turned off and the ditch would remain dry until the next turn.

On the day before the flooding, plaintiffs were not home when it was their turn to irrigate. Instead, the Julanders, tenth and last in line, took the water. When Mrs. Bigler returned home, Julanders informed her that the watermaster would turn the water out of the ditch at 3:30 p.m. and that she would have to contact Doc Snow if she wanted water. Mrs. Bigler called Doc Snow and he agreed to leave the water in the ditch until 4:30 p.m. Plaintiffs irrigated their land and the water was shut off as scheduled. Plaintiffs left their headgate in the branch ditch so that the small amount of water remaining in it would not flow down to Julanders, who already had completed their turn. Customarily the last person to use the water left his headgate in the ditch inasmuch as no more water was expected for at least 10 days.

At 6:30 a.m. on the 25th of August, plaintiffs found their basement flooded with more than a foot of water and sewage (caused by the flooding of the septic tank). The branch ditch was running at full stream. Doc Snow testified that he last checked the ditches at 4:00 p.m. on the 24th when he turned off the water to the branch ditch. His sunrise to sunset duties included the inspection and determination of water flowage, time of allotment, position of headgates, and time of non-use. Doc Snow did not return to his duties until some 20 hours later at around noon of the 25th of August.

Despite numerous requests by plaintiffs, the Canal Company did not conduct an investigation to determine the cause of the flooding, had no knowledge of how the water got into the branch ditch during the night, and could not produce the daily records routinely kept on all water flows for the period from August 20th through the 25th. Plaintiffs brought suit for damages incurred as a result of the flooding, trial was had, and the jury returned a special verdict finding the Canal Company negligent and the sole and proximate cause of all damages. Plaintiffs were found not negligent.

The Canal Company appeals contending (1) that jury instruction no. 8 was erroneous in that it required a higher standard of care by the Canal Company than required by Utah law, and (2) that the jury's finding of 100% negligence by the defendants and no contributory negligence by the plaintiffs is not supported by the evidence.

■ We dispose of the second assignment of error first by adhering to well established standards of review. A jury verdict must stand unless there is no competent evidence to support it. While the plaintiffs testified that had they removed their headgate from the branch ditch after the completion of their water turn, they would not have been flooded by the unexpected water which came into that ditch during the night, the jury was not compelled to find them contributorily negligent in that action. They adduced considerable

testimony that for the 12 years they had resided there, no water had ever come down the ditch without notice. The watermaster corroborated this fact. The ditch was not used to transport water to any other location but only to serve the 10 users. There was also testimony that it was the custom and practice of the last user to leave his headgate in the ditch. The jury's conclusion that the plaintiffs were not negligent is supported by competent evidence.

Turning now to the other assignment of error, instruction no. 8 reads:

It was the duty of the defendant irrigation company, its agents and employees, in delivering water to its users, to observe and be aware of the conditions of their ditches, the amount of water therein, and other existing conditions; in that regard, the defendant was obliged to observe due care in respect to:

1. To cause notice to be given to its users of their watering turn when water is turned into defendant's laterals from which the user takes its turn.

2. To use reasonable care to turn the water out of its lateral ditches when the watering turns are over.

3. To use reasonable care in knowing where the water is in its irrigation system to prevent same from flowing into ditches where users are not on notice of its presence, or expectation in such ditch.

The failure of defendant to exercise ordinary care in discharging the aforesaid duties could be considered negligence depending on the particular surrounding facts and circumstances.

The Canal Company objected to this instruction at the trial "on the ground that it goes way beyond any established law in the State of Utah and is prejudicial to the defendant. It also makes the Company responsible for acts beyond their control, and it basically smacks at [sic] absolute liability of the defendant Water Company, regardless of other persons."

■ The Canal Company now contends this instruction imposed upon the defendant

a standard of strict liability. We agree with the defendant that in the case under review the standard required by our law is one of only ordinary care. *Dougherty v. California-Pacific Utilities Co.,* Utah, 546 P.2d 880 (1976); U.C.A., 1953, § 73–1–8 requiring due care under the circumstances; *Erickson v. Bennion,* 28 Utah 2d 371, 503 P.2d 139 (1972), duty imposed under § 73–1–8 codifies standard of care generally applied in tort law, viz., ordinary care and prudence by persons of some experience and skill in the management of waters; *West Union Canal Co. v. Provo Bench C. & I. Co.,* 116 Utah 128, 208 P.2d 1119 (1949), liability for negligence only, not insurers against damages caused to others by its water; *Brian v. Fremont Irr. Co.,* 112 Utah 220, 186 P.2d 588 (1947), water must be distributed by adequate and proper means and in a non-negligent manner; *Mackay v. Breeze,* 72 Utah 305, 269 P. 1026 (1928), negligence or want of ordinary care must be shown by plaintiff; *Jordan v. Mount Pleasant,* 15 Utah 449, 49 P. 746 (1897), reasonable means and precautions required.

Against that backdrop of stare decisis stretching over eight decades, we examine not only the disputed instruction, but read it in harmony with all the others to determine whether the issues of fact and the applicable law were presented to the jury in a clear and understandable way. *Lamkin v. Lynch,* Utah, 600 P.2d 530 (1979); *Calahan v. Wood,* 24 Utah 2d 8, 465 P.2d 169 (1970). The instructions are pervaded by language meeting negligence criteria. They define negligence as lack of ordinary care; the standard of care as increasing in proportion to the hazards to be anticipated; and the breach of duty as the failure of the defendant to exercise ordinary care in discharging its duties in the operation of its irrigation system. Liability is restricted to defendant's negligence in that "Mapleton Irrigation Company is not an insurer against damages caused by [sic] others by its water ...," language directly lifted from *West Union Canal Company,* supra, citing *Mackay,* supra, and a long line of precedents. It is impossible to construe such meticulous observance of Utah law on the part of the trial court as imposing an erroneously high standard of care.

Instruction no. 8 accomplished no more than to set out the standard the Canal Company needed to meet in order to exercise ordinary care in discharging its duties in the operation of the irrigation system. Historically under Utah case law, construction, maintenance and repair, as well as operation, have all been cited as functions for which irrigation companies are responsible. The distribution of water, the timing of individual allotments and the monitoring of water flow in laterals are exemplary of this Canal Company's operation, particularly where it had been established that it had exclusive control over headgates controlling such flow. Subparagraphs 1, 2 and 3 of instruction no. 8 reflect those duties. We therefore hold that the instruction properly presented to the jury the facts and the applicable law on breach of standard of care.

The judgment on the special verdict is affirmed. Costs are awarded to plaintiffs.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.