### 8621

#### McDANIEL v. GREENVILLE-CAROLINA POWER CO.

1. SALUDA RIVER—NAVIGABLE STREAMS.—By 5 Stat. 223, Saluda River
   is made a navigable stream to McElhaney's Ford.
2. NAVIGABLE STREAMS—DAMS—DAMAGES.—The legislature has the power
   to grant a private corporation the right to build a dam across a
   navigable stream, but it has no power to release it from liability
   for damages to a riparian owner above accruing years after its
   erection from mud, sand and sediment accummulating in the pond.
3. IBID.—IBID.—CONDEMNATION.—In such case the remedy by con-
   demnation is not exclusive, but action may be maintained on the case
   in the Court of Common Pleas.

Before SHIPP, J., Pickens, February, 1913.  Reversed.

Action by Luvicy D. McDaniel against Greenville Caro-
lina Power Co.  Plaintiff appeals.

*Messrs. Ansel & Harris,* for appellant, cite: *Authority
by legislature to build a dam across a nonnavigable stream
does not relieve from liability for damages:* 60 S. C. 265;
58 S. C. 560. *Legislature could only grant authority to
build a dam across a navigable stream for navigation
purposes:* 2 Am. R. 64; 40 Cyc. 565; 10 Wall. 497; 82
Am. D. 201; 36 N. J. L. 335; 5 Ohio 410; 16 Wis. 661;
13 Wall. 177; 76 S. C. 100; 9 A. S. R. 91; 52 Conn. 570;
17 Am. R. 459; 48 A. S. R. 941; Code 1912, 2139; 17

Am. St. R. 459; 27 S. C. 146; 209 U. S. 452. *Plaintiff is not required to condemn:* 37 S. C. 387; 47 S. C. 464; 69 S. C. 481; 76 S. C. 98; 79 S. C. 431; 69 S. C. 185; 40 Cyc. 581; 21 A. S. R. 740; 23 At. R. 1050; 50 A. S. R. 502; 77 S. E. R. 926.

*Messrs. Haynsworth & Haynsworth, Carey & Carey* and *Osborne,* contra.

*Messrs. Haynsworth & Haynsworth* cite: *Landowner is confined to condemnation:* 37 S. C. 385; 58 S. C. 544; 47 S. C. 464; 77 S. E. 926. *The authority to erect the dam affords full protection:* 23 N. Y. 42; 35 N. Y. 520; 99 U. S. 635; 166 U. S. 269; 179 U. S. 141; 204 U. S. 364; 17 L. R. A. 631; 12 L. R. A. 677; 69 Fed. 324; 14 Pac. 613; 53 S. C. 575; 34 S. C. 62; 71 S. C. 156; 83 S. C. 315. *If the river is navigable, negligence should be alleged:* 76 S. C. 320.

July 22, 1913. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This action was brought to recover damages. The complaint alleges that in 1907 the defendant power company erected across Saluda River a dam, which obstructed the natural flow of sand and water in the channel, causing the channel to fill with sand and mud, and thus causing the plaintiff-appellant's land, lying above the dam, to be overflowed with mud, and sand, and water. There is no allegation that the dam was wrongfully or negligently constructed. The respondent interposed a demurrer to the complaint on the ground that the same did not state facts sufficient to constitute a cause of action "in that the defendant was authorized by the statutes of this State to construct the dam in question across Saluda River, which is navigable at said point, and inasmuch as the

complaint does not charge that the said dam was negligently constructed."

His Honor, Judge Shipp, sustained the demurrer, and dismissed the complaint, and from this order appellant appeals and by eleven exceptions questions the correctness of this ruling. The first three exceptions question the correctness in holding that the acts of the legislature of this State make Saluda River a navigable stream. These exceptions are overruled, as the act of the legislature declare Saluda River to be a navigable stream as far up as McElhaney's Ford. Act of December 16, 1797, vol. 5, page 322, and it is conceded that McElhaney's Ford is several miles above the land alleged to be damaged.

The other exceptions raise the question that the building of the dam, even under authority of the legislature, did not excuse or exempt it from liability for damages to riparian landowners above the dam for injuries done to their land by reason of the erection of the dam, and that the legislature only had the power over the stream to allow dams and locks built for navigation purposes, and that the respondent is a private corporation engaged in the business of generating electric power for sale, and liable for all damages done to lands above it which naturally flow from the erection of the dam, even though the act of the legislature authorizing the building of the dam did not provide for such compensation. We think these exceptions should be sustained. The legislature had the authority to authorize and allow the respondent to build the dam in question across Saluda River, which had been declared to be a navigable stream, but it had no right to give them the power to build the dam and exempt from liability to any landowner on the stream, either above or below the dam, that might suffer any injury to their property by reason of the erection of the dam, even though by authority of the State. They could only be permitted to put the dam across the river, and if by so doing they

injured any landowners on the stream, they should be required to respond in damages for such injury. If in the erection of the dam they exercised the highest degree of care and were in no manner negligent, and conducted it in the most skillful manner, yet, if by the building and maintenance of the dam they injuriously affect their neighbors, they are liable in damages. In other words, the legislature has the right to grant permission to erect the dam, and respondent had the right to build and maintain the dam, yet, if by so doing they injure the landowners on the stream, and the erection and maintenance of the dam is the direct and proximate cause of the injury to the landowners, they must pay damage, otherwise it would deprive property holders of their property and take it from them without compensation, and would be unlawful, unjust, and contrary not only to all law, but all reason and justice. It may be that when a dam is first built that it will not injuriously affect land some distance from it, and for a long time there will be no cause for them to complain, but when the pond, made by the dam, fills with mud, sand, trash, and other things, causes overflows and injury to lands, then the party injured has a cause of action, if the building and maintenance of the dam is the direct and proximate cause of their injury. The complaint in this case alleges that the water from this dam backed up on her lands, and overflowed them with water, mud, sand, and other deleterious deposits. The complaint states a good cause of action. The fact that respondent's act in building the dam was sanctioned by the State, and it did it under authority of law, and committed no fault in the erection of its dam, does not relieve it, if by so doing it injures or destroys other people's property without compensating them. I know of no law that will permit a corporation, or an officer thereof, even though he is authorized by the State, to take the property of an individual for any purpose whatsoever, however beneficial it may be to the public, without compensation, such pretended

authority would be void and could afford no protection to any one. If the appellant has been injured as a natural result by the erection and operation of this dam and the operation of the same is the direct and proximate cause of injury to her land, then she is entitled to such damages as would compensate her for such injury.

My views are that it does not make any difference whether Saluda River is navigable or not, the same rule of damages flows as laid down in *Ward* v. *Ford,* 58 S. C. 560, 36 S. E. '916, and *White* v. *Manf. Co.,* 60 S. C. 265, 38 S. E. 456. When the dam in question was erected the waters from the pond in no manner affected appellant's land. She was at that time in no manner affected, and could not foresee that later she would suffer damage, and for that reason could not demand compensation, for she then suffered no injury, and any claims made would have been conjectural and speculative on her part, but when she suffered injury from the erection and operation of the dam in question, then, and not until then, did a cause of action accrue to her, and not until then was she in a position to maintain an action. Any action brought by her until her rights were injuriously affected, or her rights invaded, would have been premature, and she would have had no status in Court.

"The legislature has no power under the Constitution to make over to any individual or corporation any right save those of the public, without securing a just compensation." *Lee* v. *Pembroke Iron Co.,* 2 Amer. R. 64.

"The rights of a riparian proprietor on a navigable stream are substantially the same as those attaching to riparian ownership on a nonnavigable watercourse, except that in some respects they are enlarged by the greater size and capacity of the stream and that there are some additional privileges connected with its navigable character. Such an owner has the right of access to the navigable part of the stream from the front of his lot, and provided he

does not impede or obstruct navigation to build private wharves, landings or piers, or use the water of the stream for any purposes." 40 Cyc. 565; *Yates* v. *Milwaukee,* 10 Wall. 497.

"While a dam in a navigable stream, if authorized by the act of the legislature, cannot be indicted as a public nuisance for obstructing the stream, still the act is no protection against injuries to a private owner." 8 Amer. and Eng. E. Law 704.

"In the case of a private stream, no one would doubt the right of an injured owner to maintain an action for the damage suffered by him by reason of a change in the current. But one has no more right to injure another with the water of a navigable stream than with that of a nonnavigable, private stream." *Fulmer* v. *Williams,* 122 Penn. St. 191.

"The right of the State to improve the stream as a highway and for the purpose of aiding its navigation is superior to the rights of the riparian owners. It may take and direct absolutely and without compensation so much of the water of the stream as may be required to improve its navigation. But that is the limit of its right." *Green Bay Co.* v. *Hankavan W. P. Co.,* 90 Wis. 370.

It was held in *State* v. *Columbia Bridge Co.,* 27 S. C. 146, 3 S. E. 55, "that the riparian proprietor had title to the soil covered by the stream as far as the center of the stream, subject to the right of the public to use of the stream for transporation as a highway, when such streams are navigable or may be made so by the removal of obstructions.".

To allow the respondent to escape paying compensation to the appellant, if appellant has been injured as she alleges in her complaint, would nullify and wipe out article I, section 17, of the Constitution of 1895. We have no doubt that the respondent should be liable for all damages, if any, caused by the building of said dam, even though they were

authorized to build.   We think that the order appealed from should be reversed.

We are of the opinion that the complaint alleges a wrongful trespass upon the lands of the appellant, and invasion of her rights.   The Court of Common Pleas has jurisdiction to try such cases, and even where condemnation is the proper procedure, it is tried in that Court, and an order must be first obtained from the resident Circuit Judge, and from the first finding appeal may be had to Court of Common Pleas.   We see no reason why the issues as made in this case cannot be tried in the Court of Common Pleas, as in other cases of trespass and damages. The appellant alleges she has been damaged for the wrongful invasion of her property right by the respondent, and demands damages as compensation.   The respondent denies that she is entitled to compensation.   The issues as made are simple and should be disposed of in the Court of Common Pleas, without having to resort to the statute providing for condemnation proceedings.   Appellant's counsel at the hearing stated that they did not care whether they had to seek damages under the condemnation statute, or proceed in the case, as made out by the pleadings in the Court of Common Pleas.   This Court is of the opinion that even if appellant could have pursued the course granted by the statute in condemnation proceedings that remedy was not exclusive in this case, and appellant not necessarily limited to that remedy.

The judgment is reversed, and case remanded for new trial.


The Chief Justice *concurs.*


Mr. Justice Fraser *concurs in the result.*   The act of incorporation gives a right of action for injury, not for negligence.   The defendant can not escape liability by pleading its own wrong in failing to condemn.

Mr. Justice Hydrick, *concurring in the result.* The sole question made by the demurrer, and, therefore, the only question properly before this Court, is, whether the complaint failed to state a cause of action in failing to allege that defendant's dam was negligently constructed. The complaint was not demurrable for that reason, because the act authorizing the construction of the dam imposes upon the corporation liability for damage caused thereby to riparian owners. True, such liability is not imposed in express terms, but it is by necessary implication; if not, why was the power of condemnation conferred upon the corporation? And why was the express provision inserted in the act, that any landowners should have the right to sue for and recover, even after condemnation, such damages as might thereafter accrue which were not considered or contemplated by the appraisers in condemnation proceedings? No doubt the legislature had in mind the possibility, under the well known natural law of running waters, that damages might accrue many years after the building of the dam, by the deposit of sediment in the bed of the stream and the consequent raising thereof, which could not be foreseen with reasonable certainty at the time of condemnation. Therefore, notwithstanding the authority to build the dam conferred upon the defendant by the statute, the plaintiff is entitled to compensation for any damage to her land caused by the dam.

It is unnecessary, therefore, to decide in this case, the other questions discussed in the opinion, and, as they are questions of some gravity, and, as they have not heretofore been decided by this Court, I prefer to reserve my opinion.

The defendant should not be allowed to shift ground and contend here—a point not raised or decided on circuit—that the complaint is demurrable because the remedy by condemnation, afforded by the statute, is exclusive.

For these reasons, I concur only in reversing the order sustaining the demurrer.