Edwin GOSSNER et al., Plaintiffs
and Respondents,

v.

UTAH POWER AND LIGHT, a Utah
Corporation, Defendant and
Appellant,

and

The State of Utah, by and through its
Division of State Lands, Defendant.

Edwin GOSSNER et al., Plaintiffs
and Appellants,

v.

UTAH POWER & LIGHT, a Utah Corpo-
ration; The State of Utah, by and
through its Division of State Lands, De-
fendants and Respondents.

Nos. 16573, 16592.

Supreme Court of Utah.

May 15, 1980.

Robert C. Huntley, Jr. of Racine, Huntley & Olson, Pocatello, Idaho, Gordon J. Low of Hillyard, Gunnell & Low, Logan, for Edwin Gossner.

Albert J. Colton and Anthony L. Rampton of Fabian & Clendenin, Salt Lake City, for Utah Power & Light.

Richard L. Dewsnup, Salt Lake City, for State.

HARDING, District Judge:

This is an interlocutory appeal from an order made by the District Court in an action between the parties hereto after a pretrial conference.

The plaintiffs own farm lands along the natural channel of the Bear River in Cache County, Utah, above the reservoir formed by a dam in the river owned by the defendant, Utah Power & Light Company, called the "Cutler Dam." Subject to certain prior rights, the defendant has the right to divert at the Stewart Dam in Idaho and impound and store in the nearby Bear Lake Reservoir all of the waters of the Bear River to the extent of 5,500 c.f.s., together with the waters naturally flowing into or arising in said reservoir. The storage water is to be released from said reservoir at defendant's pleasure, through control works and a canal to a junction with the Bear River in the State of Idaho. From this point, the natural channel of the river is used to convey the water to other reservoirs and power generating plants along the river. The plant lowest on the river is the one at Cutler Dam, and the one next above that being at the defendant's Oneida Dam in Idaho about 25 miles upstream from the Utah-Idaho state line.

To a considerable extent, the defendant can control the volume of water flowing in the natural channel of the Bear River as it courses through the area of the plaintiffs' farms. Its power plants at Oneida and Cutler can use a maximum of 3,000 c.f.s. in the generation of electricity.

In the fall of 1976, the plaintiffs filed suit against the defendant, Utah Power & Light Company, claiming damages to their crops caused by the flooding of their farm lands along the river. The flooding occurred from releasing more water into the river than it would hold without overflowing onto adjacent lands. The capacity of the river had been gradually reduced over the years by deposits of sediment along its natural channel. Plaintiffs claim that the maximum capacity of the natural channel is now 3,400 c.f.s. We have no information as to its original capacity.

The plaintiffs have proceeded on the theories of absolute liability, or of the negligence of the defendant, in not controlling

the volume of water in the river between the Oneida Dam and the Cutler reservoir to prevent flooding and injury and damage to plaintiffs' crops.

Defendant, Utah Power & Light Company, claims to exercise its rights of operation of its system of dams and reservoirs on the Bear River pursuant to two judicial decrees, namely, the so-called "Dietrich" and "Kimball" decrees. The *Kimball* decree incorporates by reference the terms of the Dietrich decree. The Dietrich decree was entered in Idaho in 1920, and provided in part as follows:

. . . Utah Power & Light Company has the right to divert at the Stewart Dam . . . and to impound and store in Bear Lake Reservoir . . . all the waters of Bear River to the extent of 5500 cubic feet per second of time, together with the waters naturally flowing into or arising in said lakes, all said water to be stored in said reservoir, and to be thereafter released from said reservoir at the said plaintiff's pleasure, through the plaintiff's embankment . . . and thence down the natural channel of Bear River, for use at various points of diversion now existing, or which may hereafter be established by the plaintiff for the generation of electric power. . . . "Power rights" include the right to divert and use water for the generation of electric power, and such rights of diversion and use are continuous throughout the year without limitation to time or season.

The Kimball decree, filed in Utah in 1922, was entered in the case of *Utah Power & Light Company v. Richmond Irrigation Company,*[1] *et al.* The plaintiffs in the instant case are successors in interest to the defendants in the Kimball decree and are bound by its terms.

Defendant claims the right under the aforesaid decrees to release its storage water into the Bear River channel at its pleasure any time of the year in a volume of not more than 5,500 c.f.s., without any liability for flooding land adjoining the river channel, or for crop damage resulting from the flooding of the land.

At the pretrial conference, the court made certain orders, the pertinent parts being as follows:

(2) The Court rules as a matter of law that the only liability of the defendant, if any, will be limited to floodings resulting from the filling of the river channel with silt if caused by the erection of the Cutler Dam; and that the defendant will be liable absolutely for damages occasioned thereby. In other words, the tort committed by the Utah Power & Light Company, if any, for which it may be liable to the plaintiffs is the blocking of the channel of the Bear River by silt caused by the erection of the Cutler Dam.

The Court further rules as a matter of law that with regard to the release of waters the standard of care imposed upon the defendant is established by the Kimball and Dietrich decrees, and inasmuch as it is stipulated that such releases have never exceeded 5,500 c.f.s. there is no liability of the defendant either in absolute liability, or in negligence because of release of water from the Oneida Dam.

(3) It is ordered that the motion for Summary Judgment by Utah Power & Light Company as against all plaintiffs on the ground that the statute of limitations is a bar to the plaintiffs' claim be, and hereby is, denied as made. The Court holds as a matter of law that the three year statute of limitations (which is applicable to plaintiffs' claims) began to run from the date when the channel of the Bear River was filled with silt (caused by the erection of the Cutler Dam) so as to cause flooding of the adjacent farm land of plaintiffs.

(4) It is further ordered that the motion for Summary Judgment dismissing with prejudice the complaint of the plaintiffs Ed Gossner and Josephine Gossner, on the ground that they and their predecessors have heretofore conveyed easements to Utah Power & Light Company be, and hereby is, granted.

1. No. 1772 (1st Jud.Dist., decided Feb. 21, 1922).

The plaintiffs' appeal from the order is limited to three issues as follows:

(1) The Trial Court's declared intent to utilize an improper date of commencement of statute of limitations.

(2) Error in the Court's declared intent to limit evidence of fault and causation in the following respects:

(a) to deny introduction of testimony as to the effect of negligent operation of Oneida Dam, and

(b) ruling that the Kimball and Dietrich decrees permit a discharge of 5,500 c.f.s. when, in fact, the decrees limit the discharge of waters to those which can be contained in the natural channel.

(3) The erroneous dismissal of plaintiffs Edwin Gossner and Josephine Gossner by virtue of flood easements.

The defendant Utah Power & Light Company appeals from those portions of the order of the District Court in this case which imposes upon the defendant a standard of absolute liability for damages from flooding caused by siltation of the river channel if such situation is caused by the erection of the Cutler Dam, and denying its motion for summary judgment based upon the res judicata effect of the Dietrich and Kimball decrees.

■■■ We think the construction that should be given to the Dietrich and Kimball decrees regarding the volume of water to be released from storage and returned to the Bear River channel for its use for the generation of electricity and for irrigation is of prime importance. We note that the Dietrich decree states that such water shall be conveyed in the "natural channel" of the Bear River. We see nothing express or implied in either decree that indicates that lands adjacent to the natural bed and banks of the river are to be considered as a part of the natural channel. Such lands may be a part of the natural flood plain of the river in time of heavy spring floods, but are not to be called the "natural channel." [2]

■■■ Defendant claims that releases of water from storage must be at the same rate as allowable diversions and impoundments, that is at the rate of 5,500 c.f.s. This ignores the very purpose of such storage—to divert from the river and to hold in reservoirs the high water that may come in winter, spring, or early summer, and any other water that would otherwise be wasted, and let it down the river in a volume that would permit it to be beneficially used for the generation of electricity and to supply the irrigation rights.

Ordinarily, in the exercise of due care, the extent of the snow cover on the watershed of the Bear River and its water content will be surveyed at various appropriate times, and a rough estimate made as to the water yield. Then a determination can be made regarding the management of the river flow and the regulation of the reservoirs to provide capacity to hold back and store the high water for later use when the stream flow has decreased. This also serves to lessen flooding along the river. It is not expected that perfection can be achieved in this regard, but reasonable care and foresight are required.

An unusually heavy snow cover over the watershed with high water content may force the release of a greater quantity of water down the river channel than beneficial uses require, and may even send flood water down the channel. Also, there may be occasions when there are cloud bursts or extraordinary rain storms along the river system at a time when the reservoirs are full or nearly so, and the excess water has no place to go but down the channel. These instances may be properly classified as acts of God for which defendant would not be liable.

We hold that the aforesaid decrees do not grant to the defendant any easements for the flooding of the plaintiffs' lands adjacent to the river. We further hold that the volume of released storage water is limited to the carrying capacity of the natural channel of the Bear River as such channel and volume may be established by the evi-

---

**2.** *Pima Farms Co. v. Proctor*, 30 Ariz. 96, 245 P. 369 (1926); *State v. Bonelli's Cattle Co.*, 107 Ariz. 465, 489 P.2d 699 (1971), Supp. op. 108 Ariz. 258, 495 P.2d 1312 (1972).

dence. However, this limitation is subject to the qualifications mentioned in the next preceding paragraph.

Since beneficial use is the basis, the measure, and the limit of all rights to the use of the public water, and the power plants at Cutler and Oneida dams can use beneficially no more than 3,000 c.f.s. of water, it would be a great waste of valuable water to bypass the turbines at these plants with another 2,500 c.f.s. It is safe to assume that the defendant will not knowingly release water, except in an emergency or to supply other appropriators' rights, without obtaining as much power as possible from its use.

When the case is tried on its merits, it will be necessary to determine the carrying capacity of the natural channel of the Bear River as contemplated in the aforesaid decrees, and whether the defendant has been negligent in releasing more water at the Oneida dam than the natural channel will carry.

If the Court finds that the flooding of plaintiffs' farm lands, as claimed, was an event that could have been averted by the exercise of reasonable care and foresight by the defendant and was, therefore, abatable as of the time when plaintiffs' complaint was filed, the statute of limitations would run from the date of any injury and damage, and there may be successive recoveries for successive injuries.[3]

If the evidence establishes that the carrying capacity of the natural channel is being gradually reduced by deposits of sediment in the bed of the river caused by the existence of defendant's dams and reservoirs along the river, and the absence of the scouring effect of high spring runoff and flash floods from time to time, this is a situation which the defendant should remedy without flooding lands adjacent to the river. To the extent that any such flooding is caused by the defendant the rule of strict liability for damages is appropriate;[4] and the plaintiffs should be entitled to recover for any damages thus caused within the statute of limitations.

With respect to the dismissal of the complaint of the plaintiffs, Edwin Gossner and Josephine Gossner, on the ground of a previously conveyed flood easement on their land, we hold that said plaintiffs' claim appears to present issues of fact as to whether or not there has been a negligent abuse of the flood easement, and that their claim should be tried on its merits.[5]

This case is remanded to the District Court for a trial consistent with this decision.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

WILKINS, J., having disqualified himself does not participate herein.

3. *Gowing v. McCandless*, 219 Kan. 140, 547 P.2d 338 (1976).

4. *McDaniel v. Greenville-Carolina Power Co.*, 95 S.C. 268, 78 S.E. 980, 6 A.L.R. 1321 (1913);

cited in Brazos River Authority v. City of Graham, 335 S.W.2d 247 (Tex.1960).

5. *Kunz v. U. P. & L. Co.*, 10th Cir., 526 F.2d 500 (1975).