1999 UT 10

**L. Carl JENSEN, Plaintiff and Appellant,**

v.

**INTERMOUNTAIN POWER AGENCY, a political subdivision of the State of Utah, Delta Canal Company, Melville Irrigation Company, Abraham Irrigation Company, Deseret Irrigation Company, and Central Utah Water Company, Defendants and Appellees.**

No. 950464.

Supreme Court of Utah.

Feb. 2, 1999.

Rehearing Denied May 12, 1999.

Jackson Howard, Phillip E. Lowry, Provo, for plaintiff.

Andrew M. Morse, Marc T. Wangsgard, Salt Lake City, for defendants.

ZIMMERMAN, Justice:

¶ 1 This case involves a negligence claim relating to damage caused by flooding of the Sevier Bridge Reservoir in 1983 and 1984 and an unrelated claim concerning certain water rights located under the reservoir. As to the disputed water rights, the trial court concluded, as a matter of law, that defendants had an easement to store water in the reservoir and that plaintiff's land and water rights were subject to the terms of that easement. As to claims that defendants' negligence resulted in the flooding of plaintiff's land, a jury found that defendants were not negligent. We affirm on both issues.

¶ 2 Defendants in this case, Delta Canal Co., Melville Irrigation Co., Abraham Irrigation Co., Deseret Irrigation Co., Central Utah Water Co., and Intermountain Power Agency [1] (collectively "IPA"), have appropriation rights in water from the Sevier River and storage easements in the Sevier Bridge Reservoir ("the reservoir").[2] These easements give IPA the right to store water up to the level of the reservoir's capacity of 80 feet, the height of the reservoir's spillway. Plaintiff L. Carl Jensen owns certain property, some parcels of which straddle the reservoir's 80-foot contour and some parcels of which lie completely below the contour.

¶ 3 In June of both 1983 and 1984, runoff flows were at unprecedentedly high levels and caused portions of Jensen's land to flood. Jensen claims that this flooding damaged his property straddling the contour by damaging fences, corrals, and roads and by leaving silt, alkali, and debris deposits. Jensen also claims that this flooding caused damage to his land lying below the contour and thereby interfered with his stock operation.[3] Jensen filed an action against IPA, claiming that it was negligent in failing to adequately prepare for the excessive runoff. Jensen sought injunctive relief and damages in excess of twelve million dollars. Jensen also filed a quiet title action, alleging water rights in both water appurtenant to the reservoir and appropriated water from the reservoir.[4] Jensen also sought damages for IPA's and its predecessor's expropriation and conversion of his water.

¶ 4 On February 2, 1994, the trial court granted a partial summary judgment in

---

1. Intermountain Power Agency owns stock in each of the five irrigation companies.

2. A series of adjudications addressing water rights and storage priorities related to the Sevier River and the reservoir occurred in the early 1900's. In 1936, a general adjudication was finalized, quieting title to the water and decreeing primary flow rights and storage rights. In this decree, IPA's predecessors perfected the right to appropriate water from the Sevier River and the right to store it up to the reservoir's full capacity of 80 feet.

3. Jensen acknowledges that water covers his parcels lying below the 80-foot contour during the winter months, the time when the reservoir

serves to collect and hold water. Then, in April, the beginning of the growing season, the water is released downstream for irrigation needs. Because of this practice, Jensen's land lying below the 80-foot contour was typically completely exposed by summer. Jensen used the exposed land as grazing pasture for his stock operation. Jensen claims that because of IPA's negligence, the reservoir's level remained too high, prohibiting exposure of his land below the 80-foot contour. Jensen claims that because his land below the contour was not exposed until early fall, his stock operation failed.

4. Jensen claimed that his predecessors were given well rights for all wells that fell below the reservoir's 80-foot contour.

IPA's favor and dismissed Jensen's easement and water rights claims. The trial court conducted a jury trial on the flooding issues. The jury found that IPA was not negligent, and the court dismissed the remainder of Jensen's claims. Jensen moved for a judgment notwithstanding the verdict and for a new trial. The court denied both motions and entered a final judgment on August 10, 1995. Jensen appealed.

¶ 5 In his brief before this court, Jensen challenges the partial summary judgment disposing of his easement and water rights claims. He also attacks the jury verdict, arguing that the trial court committed several errors in instructing the jury, abused its discretion in allowing IPA to present statistical evidence related to the severity of the 1983 and 1984 flooding of the Sevier River, and abused its discretion in allowing the introduction of a video depicting the collapse of another dam downstream from the dam associated with the reservoir. During the appellate briefing process, IPA moved for summary disposition or, alternatively, to limit the scope of the appeal. It argues that this court does not have jurisdiction to review the partial summary judgment because Jensen did not appeal from the judgment finalizing it. We address this jurisdictional question first.

¶ 6 Jensen's notice of appeal states that he appeals from "the jury verdict entered ... on July 14, 1995," and the trial court's "denial of his Rule 50 and Rule 59 motion, which denial was entered ... on October 10, 1995." Jensen did not state in his notice that he was appealing either the February 2, 1994, judgment granting IPA partial summary judgment or the August 10, 1995, final judgment concerning both the jury verdict and the partial summary judgment. Thus, neither of the judgments Jensen listed in his notice deals with the partial summary judgment.

¶ 7 Rule 3(d) of the Utah Rules of Appellate Procedure requires that "[t]he notice of appeal shall ... designate the judgment or order, or part thereof, appealed from." Utah R.App. P. 3(d). This court has held that rule 3(d)'s requirement is jurisdictional. In *Nunley v. Stan Katz Real Estate, Inc.*, 15 Utah

2d 126, 388 P.2d 798 (1964), we emphasized that "the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case. Respondent is entitled to know specifically which judgment is being appealed." *Id.* at 800; *see also Smith v. Barry,* 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (stating that requirements of rule 3 "are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review"). Jensen contends that his appeal of the court's denial of his rule 50 motion for a j.n.o.v. and rule 59 motion for a new trial is sufficient to encompass the partial summary judgment. Jensen reasons that because a party cannot appeal the denial of a motion for a new trial, courts have treated appeals designated as being from such rulings as appeals from the final judgment. He cites *Price v. Western Loan & Savings,* 35 Utah 379, 100 P. 677 (1909), in which this court denied a motion to dismiss an appeal, finding that the party's appeal from a motion denying a new trial really was an appeal from the final judgment.

¶ 8 We find *Price* distinguishable. There, this court found that the notice of appeal sufficiently identified the final judgment at issue, even though it purported to be from the denial of a new trial. Moreover, *Price* allowed the appeal to proceed only because the respondent was not prejudiced by the failure to properly notice the appeal. In contrast, here, Jensen's motion for a new trial was addressed only to those claims that went to the jury, which did not include the water rights claims. In addition, IPA was prejudiced by Jensen's oversight. After Jensen failed to notice an appeal from any judgment related to the partial summary judgment on the water rights issue, IPA elected not to proceed with cross-appeals against certain third-party defendants whom the court had dismissed years earlier by granting them summary judgment. IPA did not receive Jensen's docketing statement, which first indicated that Jensen was attempting to obtain review of the grant of partial summary judgment, until at least five days after the date on which IPA's time for cross-appeal expired. Thus, Jensen's faulty notice of

appeal precluded IPA from cross-appealing against those who might share responsibility for the water rights claims.

¶9  For the foregoing reasons, we hold that we do not have jurisdiction to review Jensen's claims relating to the partial summary judgment. We, therefore, grant IPA's motion to limit the scope of this appeal and do not address Jensen's easement or water rights arguments.

■ ¶10  We proceed to a review of claims related to the flooding. Jensen first argues that the trial court used the wrong standard for determining IPA's liability for flooding above the 80–foot contour. The question of the correct legal standard is a question of law, which we review for correctness. *See generally State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

■ ¶11  The trial court held that a negligence standard was the correct standard for the jury to use in determining IPA's liability for flooding. This court has held numerous times that a defendant is liable for flood damage caused by irrigation water only if the defendant was negligent. *See, e.g., Bigler v. Mapleton Irrigation Canal Co.*, 669 P.2d 434, 437 (Utah 1983). But Jensen argues that those cases are inapplicable. Rather, he contends that the proper rule is that of *Gossner v. Utah Power & Light*, 612 P.2d 337 (Utah 1980), in which we held a defendant strictly liable for damage caused by the erection of a dam. Jensen's reliance on *Gossner* is misplaced. In *Gossner*, this court stated that we would hold a defendant operating a dam strictly liable for flooding resulting from its operation if the defendant had caused flooding by releasing water into a river when the defendant knew that the erected dam had reduced the river's natural flow capacity by depositing increased amounts of sediment in its bed. *See id.* at 339, 341. For other flooding circumstances, unrelated to changes in the river's carrying capacity, *Gossner* applied a negligence standard. In the present case, the claims against IPA are all related to the dam's operation. Therefore, we hold that the trial court did not err by instructing the jury that IPA would only be held to a negligence standard in operating the dam rather than a strict liability standard.

¶12  Jensen next argues that the trial court erred by admitting certain statistical evidence regarding the level of runoff in both 1983 and 1984 and a videotape showing flooding of the Sevier River below the dam. The admissibility of an item of evidence is a legal question. *See Pena*, 869 P.2d at 938. However, in reviewing a trial court's decision to admit or exclude evidence, we allow for broad discretion. *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225, 233 (Utah 1995).

■ ¶13  We address the admission of the statistical evidence first. Jensen objected to the admission of evidence of the Sevier River's historic flows suggesting that flooding of 1983's and 1984's magnitude likely would occur only once every 200 to 30,000 years. Jensen argues that the trial court should have excluded the evidence under rule 403 of the Utah Rules of Evidence because its prejudicial effect "outweighed" its probative value. We disagree. Rule 403 mandates admission of relevant evidence unless its prejudicial effect "substantially outweighs" its probative value. Utah R. Evid. 403. The probative value of the statement that flooding of 1983's and 1984's magnitude would occur only once every 200 to 30,000 years is not substantially outweighed by its prejudicial effect or its potential to mislead. This is especially true because Jensen, as the trial court acknowledged, could cross-examine the witness and establish that despite these predictions, the once–every–200– to 30,000–year flooding occurred in both 1983 and 1984.

■ ¶14  Jensen also argues that the trial court should have excluded a videotape depicting the DMAD dam on the lower Sevier River collapsing as a result of the 1983 flooding. Jensen argued that this evidence was irrelevant or that, if relevant, its prejudicial effect outweighed its probative value. It is true that the video depicted flooding in an area far distant from Jensen's land. However, the runoff causing the collapse in the video was the same runoff that caused damage to Jensen's land. IPA introduced the evidence to support its theory that given the system-wide flooding, decisions related to the

management of the Sevier River Reservoir necessarily had to consider the downstream effects of those decisions. This goes to IPA's defense against Jensen's claim that it acted negligently in operating the dam. Given IPA's theory, the video was very relevant, and Jensen has failed to show that its prejudicial effect substantially outweighed its probative value. Accordingly, we conclude that the trial court did not abuse its discretion in admitting either the statistical evidence or the video.

¶ 15 Jensen also claims that the trial court erred in instructing the jury regarding the authority of the Lower Sevier River Commissioner. Instruction 23 told the jury: "In order to find for the plaintiff, you must find that defendants had the right or ability to control the discharge of water from the Sevier Bridge Reservoir. In order to so find, you must find that the Lower River Commissioner, Roger Walker, was an agent of defendants." Jensen objected to the instruction at trial, claiming that this instruction ignored the fact that the jury could find for him even if Walker was not an agent of IPA if the jury found that IPA failed to properly maintain and operate the dam.[5]

¶ 16 Whether a trial court properly instructed the jury is a question of law, which we review for correctness. *See Steffensen v. Smith's Management Corp.*, 862 P.2d 1342, 1346 (Utah 1993). In reviewing a jury instruction, we consider the challenged instruction in context. *See Madsen v. Brown*, 701 P.2d 1086, 1092 (Utah 1985). "As we have repeatedly held, if the jury instructions as a whole fairly instruct the jury on the applicable law, reversible error does not arise merely because one jury instruction, standing alone, is not as accurate as it might have been." *Bott v. DeLand*, 922 P.2d 732, 741 (Utah 1996). In this case, although the instruction at issue implies that

the only theory upon which the jury could find IPA liable required establishing an agency relationship between IPA and the river commissioner, other instructions allow the jury to find for plaintiff using other theories of liability. For example, instruction 11 stated that "defendants would be negligent if they allowed one or more of the following to happen: ... They failed to reasonably maintain the dam, spillways, and downstream diversions so they could accommodate foreseeable run-off or flood storage flows." Moreover, a special verdict form required the jury to answer the question, "Were the defendants negligent?" In a discussion about the verdict form, IPA argued that the form should instead ask, " 'Was Roger Walker negligent?' since he's the only one the evidence pointed to." Despite IPA's objection, the court presented the verdict form with the question asking whether "defendants" were negligent. We conclude, considering the instructions as a whole, that the court did not commit prejudicial error in instructing the jury on the applicable law.

¶ 17 In conclusion, we determine that we lack jurisdiction to review the trial court's grant of partial summary judgment in IPA's favor. We further conclude that the trial court did not abuse its discretion in admitting either the statistical evidence or the videotape and correctly instructed the jury about the applicable bases of negligence. Affirmed.

¶ 18 Chief Justice HOWE, Associate Chief Justice DURHAM, and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

¶ 19 Justice STEWART concurs in the result.

---

5. Before this court, Jensen also argues that the trial court erred in giving instruction 23 because it had already decided, as a matter of law, that IPA controlled the reservoir. For support, Jensen relies on legal conclusions the trial court made in its February 3, 1995, grant of summary judgment to thirdparty defendants. Jensen's argument ignores the plain language of the legal conclusion upon which he relies. In the sum-

mary judgment order, the trial court concluded only that the individual irrigation companies, "in conjunction with the river commissioner or individually, control waters which are stored within the Sevier Bridge Reservoir." We disagree that this legal conclusion demonstrates that the trial court, as a matter of law, concluded that IPA controlled the reservoir.