**2016 UT App 43**

## THE UTAH COURT OF APPEALS

CDC RESTORATION & CONSTRUCTION, LC,
Appellee,
*v.*
TRADESMEN CONTRACTORS, LLC,
Appellant.

Opinion
No. 20130097-CA
Filed March 3, 2016

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 080908435

Sarah L. Mathews and Stephen M. Enderton,
Attorneys for Appellant

Richard F. Ensor and Michael C. Barnhill, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1     Tradesmen Contractors, LLC appeals from a jury verdict
in favor of CDC Restoration & Construction, LC. The jury found
that Tradesmen misappropriated CDC's information. We affirm.

BACKGROUND[1]

¶2     CDC specializes in concrete repair and coatings. Between 2003 and 2005, it had a contract to perform concrete repair and restoration work at a refinery owned by Kennecott Utah Copper Corporation (Kennecott). As part of this arrangement, CDC and Kennecott entered into a Preferred Provider Agreement (PPA). The PPA was a confidential document that, among other things, set forth the rates for CDC's work, the pricing information for CDC's hourly employees, and for the hourly, daily, weekly, and monthly rates for various pieces of equipment.

¶3     Paul Carsey began working at CDC in 1992 and served as a foreman during the time of CDC's work for Kennecott. In the course of his duties, Carsey regularly delivered sealed envelopes that contained confidential information. But, although he was informed that information related to CDC's projects was confidential, Carsey never signed a confidentiality agreement.

¶4     At the beginning of January 2006, Carsey gave Ralph Midgley, CDC's co-owner, two weeks' notice of his intent to resign from CDC. Carsey explained to Midgley that he was "burned out" and "tired of working at Kennecott." He told Midgely of his plan to earn a living by buying, refurbishing, and selling houses instead. Unbeknownst to Midgely, Carsey had already become a co-owner and director of a new competing company, Tradesmen, with Kenneth Allen.

---

1. "In reviewing a jury verdict, we view the evidence in the light most favorable to it, and recite the facts accordingly. We present conflicting evidence only to the extent necessary to understand the issues raised on appeal." *Ortiz v. Geneva Rock Prods., Inc.*, 939 P.2d 1213, 1215 (Utah Ct. App. 1997) (citations and internal quotation marks omitted).

¶5     Allen was a subcontractor for Kennecott who acted as the project supervisor overseeing CDC's work there. In this role, Allen received CDC's invoices for its projects and verified that its rates conformed to those specified in CDC's PPA. Consequently, Allen received and had access to CDC's pricing information. Although Allen had worked as a contractor at Kennecott for twenty-eight years, he met with Carsey and other potential business associates sometime in mid-2005 to discuss forming a company to perform work at Kennecott. Allen stopped working at the refinery in December 2005. The same month, he finalized his ownership interest in Tradesmen and instructed another partner not to disclose to Kennecott his status with Tradesmen.[2]

¶6     In late 2005, Kennecott opened a competitive bid process on a project known as E-Bay (the Project) at its refinery. Kennecott invited a pre-bid walkthrough of the Project site on Monday, January 9, 2006. Together, Midgely and Carsey participated in the walkthrough on behalf of CDC. Tradesmen also had two representatives participate in the walkthrough. When Midgley asked questions about Tradesmen, Carsey responded that he had "never heard of them."

¶7     After the walkthrough, Midgley and Carsey developed CDC's bid and assessed the equipment needs and the amount of time and labor that would be required to complete the Project. Although Carsey had "a better grasp" on what needed to be done and had expertise in estimating labor and equipment needs, the two "combined [their] knowledge" in "debating out what it took to do [the Project.]." Once Midgley and Carsey made these calculations, Midgley formulated the bid by taking

---

2. In November 2005, Allen wrote an email to a Kennecott employee in which Allen purported to have little information about Tradesmen.

those figures and entering them into a spreadsheet with the labor and equipment rates. The rates used in the spreadsheet matched the pricing information in CDC's PPA. Before submitting the final bid on Friday, January 13, Midgley increased it after Carsey told Midgley that more labor hours were needed.

¶8    Midgley believed both CDC's PPA and its final bid were confidential, and he shared CDC's labor and equipment estimates with only Carsey and Kennecott. In addition, Midgley kept the details of CDC's bid in his locked office to prevent someone from having "an advantage [by] trying to underbid" CDC.

¶9    Meanwhile, Carsey and Allen were in frequent telephone contact when the two companies were formulating their bids. According to a partner at Tradesmen, Carsey gave Allen input on the numbers for Tradesmen's bid the night before bids were due.

¶10    CDC, Tradesmen, and another company submitted bids for the Project. CDC's bid was the highest at $179,729.32, Tradesmen's was the second highest at $141,575.00, and a third company's was the lowest. On January 23, 2006, Kennecott awarded the Project to Tradesmen. Dan Larsen, who had replaced Allen as the supervisor at Kennecott, informed Midgley that Tradesmen won the contract because it was "the lowest competent bidder" owing to the fact that Carsey worked there. Until this point, Midgley did not know Carsey was involved with Tradesmen.

¶11    CDC brought suit against Tradesmen, Allen, and Carsey (collectively, Defendants), alleging, among other things, misappropriation of trade secrets for improper use of its labor and equipment rates and bid information. The trial court granted summary judgment to Defendants on all claims. On appeal from that order, this court affirmed in part and reversed in part. *CDC*

*Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶¶ 60–61, 274 P.3d 317. This court affirmed with regard to the misappropriation of labor and equipment pricing information, concluding that these details are not job-specific and "not, as a matter of law, entitled to trade secret protection." *Id.* ¶¶ 27, 28 n.2. Nevertheless, without opining on the merits of the issue, this court determined that CDC presented enough evidence to create a genuine issue of material fact to preclude summary judgment regarding CDC's claim for misappropriation of bid information. *Id.* ¶¶ 28, 32, 61 & n.7.

¶12    The case proceeded to a jury trial. CDC argued that its labor and equipment estimates for the Project and its total bid were trade secrets. CDC further argued that although Tradesmen never had access CDC's actual bid, Tradesmen misappropriated the pricing information and the labor and equipment estimates used to compute CDC's bid. Specifically, CDC argued that Tradesmen inappropriately used Carsey's knowledge of CDC's estimates and Allen's familiarity with CDC's pricing information to formulate Tradesmen's lower bid for the Project. In contrast, Tradesmen argued it did not misappropriate the bid information because it had no access to CDC's actual bid and because Carsey's general knowledge about estimating labor and equipment needs for projects is not a trade secret.

¶13    At the close of CDC's case-in-chief, Tradesmen moved for a directed verdict, arguing CDC failed to provide any competent evidence showing that its bid information was a trade secret and that Tradesmen misappropriated and used CDC's bid. In opposing the motion, CDC argued the bid was a trade secret because it resulted from a collaborative effort and circumstantial evidence showed Tradesmen used the bid information. The court denied Tradesmen's motion, ruling that enough circumstantial evidence created a question for the jury on CDC's claim.

¶14 Although Tradesmen proposed jury instructions stating that the standard for a trade secret is "whether the information is generally known and readily ascertainable to" Defendants "based on [their] knowledge and experience," the instructions submitted to the jury omitted this language but tracked the statutory language used in Utah's Uniform Trade Secrets Act. Additionally, an instruction informed the jury that "it is the law [of the case] that CDC's [PPA], pricing information, and equipment rates to perform the E-Bay Project are not trade secrets."

¶15 The jury ultimately found against Defendants. In accordance with the verdict, the trial court entered judgment in favor of CDC, awarding it $161,974 from Allen, $171,974 from Carsey, and $982,455 from Tradesmen. Tradesmen appeals.[3]

ISSUES AND STANDARDS OF REVIEW

¶16 Tradesmen first contends the trial court erred in denying its motion for a directed verdict. "We review the trial court's grant or denial of a motion for directed verdict for correctness." *Francis v. National DME*, 2015 UT App 119, ¶ 22, 350 P.3d 615 (citation and internal quotation marks omitted). "Accordingly, we will sustain a directed verdict if[,] after examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶17 Second, Tradesmen contends the trial court submitted erroneous instructions to the jury. "Whether a trial court properly instructed the jury is a question of law, which we

---

3. Although all three Defendants are listed on the notice of appeal, only Tradesmen has filed appellate briefs in this matter.

review for correctness." *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 16, 977 P.2d 474.

¶18 Third, Tradesmen contends the trial court erred in allowing the admission of certain evidence under rules 402 and 403 of the Utah Rules of Evidence. "Trial court rulings on the admissibility of evidence generally entail a good deal of discretion, and we review those rulings for an abuse of discretion." *Francis*, 2015 UT App 119, ¶ 20 (citation and internal quotation marks omitted).

ANALYSIS

I. Directed Verdict

¶19 Tradesmen contends the trial court should have granted its motion for a directed verdict on the ground that there was no competent evidence of misappropriation of bid information that could support a verdict in CDC's favor. Under Utah's Uniform Trade Secrets Act (the UTSA), a prima facie case of misappropriation has "two essential elements: existence of a protectable 'trade secret' of a plaintiff and demonstration of 'misappropriation' by a defendant." *InnoSys, Inc. v. Mercer*, 2015 UT 80, ¶ 24, 364 P.3d 1013 (quoting Utah Code Ann. § 13-24-2 (LexisNexis 2013)). We address Tradesmen's contentions as to each element in turn.

A.    Trade Secret

¶20 Tradesmen contends there was no competent evidence that CDC's bid information was a trade secret. Under the UTSA, a "trade secret" is information, such as a formula, technique, or process that:

> (a) derives independent economic value, actual or potential, from not being generally known to, and

> not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 13-24-2(4).[4] The trial court would be "justified in granting a directed verdict only if, examining all evidence in a light most favorable to [CDC], there is no competent evidence that would support" a finding as to both components of the trade secret definition. *See Merino v. Albertsons, Inc.*, 1999 UT 14, ¶ 3, 975 P.2d 467.

i. Independent Economic Value

¶21    Tradesmen contends that CDC's bid information and labor and equipment estimates cannot be considered trade secrets with independent economic value. In particular, Tradesmen argues "CDC failed to present any evidence that differentiated the knowledge and experience of . . . Defendants and CDC's purported trade secret." According to Tradesmen, the hours and equipment estimates that went into CDC's bid "came directly from Mr. Carsey's knowledge and expertise, which as a matter of law cannot be a trade secret."

¶22    The Utah Supreme Court has explained that "'[a] unique combination of generally known elements or steps can qualify as a trade secret, if it represents a valuable contribution attributable to the independent efforts of the one claiming to have conceived it.'" *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 43, 235 P.3d 749 (quoting *Microbiological Research Corp. v. Muna*, 625 P.2d 690, 696

---

4. Because the relevant statutory provisions have not changed since the events in question, we cite the current codification of the Utah Code.

(Utah 1981)). Further, information may qualify as a trade secret "if extensive effort is required to pierce its veil by assembling the literature concerning it and thereby uncover its parts." *Microbiological Research*, 625 P.2d at 696 (citation and internal quotation marks omitted). By contrast, "[i]f this can be readily done by one who is normally skilled in the field and has a reasonable familiarity with its trade literature, the secret may no longer be entitled to protection." *Id.* (citation and internal quotation marks omitted).

¶23　Whether information is "generally known and readily ascertainable" is not merely "whether the information is generally known and readily ascertainable to the general public, but, based on the defendant['s] knowledge and experience, whether the information was known or ascertainable to [the defendant]." *USA Power*, 2010 UT 31, ¶ 44 (alterations in original) (citation and internal quotation marks omitted). This standard "takes into account the relevant experience and knowledge of the specific defendants." *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 24, 274 P.3d 317. "There must be a delineation between the general knowledge and experience of the employee and the trade secrets of the employer." *Microbiological Research*, 625 P.2d at 697. Specifically, our supreme court has recognized there is a "distinction between . . . an employee, who leaves one employer and uses his own faculties, skill and experience in the establishment of an independent business or in the service of another, and [an employee] who uses confidential information, secured solely through his employment, to the harm of his previous employer." *Id.*

¶24　We conclude that CDC offered competent evidence from which the jury could find that its bid information and labor and equipment estimates derive independent economic value from not being generally known or readily ascertainable. Tradesmen's argument centers on an alleged lack of differentiation "between

the knowledge of Mr. Carsey and the variables which CDC argued were the critical parts of its bid." Although the evidence showed that Carsey had knowledge and expertise in estimating labor and equipment needs for projects and that he played an important role in calculating CDC's estimates, Midgley testified that he and Carsey walked through the Project site together and used their "combined knowledge" in putting together the estimates which Midgley then multiplied by the pricing information to calculate CDC's actual bid.[5] Thus, even if Carsey was capable of estimating the needs for the Project on his own, CDC offered evidence that Carsey's knowledge of CDC's exact estimates came directly from working with Midgley to calculate estimates on CDC's behalf. Viewing the evidence in the light most favorable to the jury's verdict, the trial court correctly determined CDC presented sufficient competent evidence that—even taking into account Carsey's relevant experience—its bid information and labor and equipment estimates were not readily ascertainable by others.

ii. Efforts to Maintain Secrecy

¶25   On appeal, Tradesmen contends that "CDC failed to provide any evidence that [it] used reasonable efforts under the circumstances to maintain the bid information's secrecy as required under Utah law." "[T]o preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (second alteration in original) (citation and internal quotation marks omitted). This requires parties to raise it in a timely manner and with supporting evidence or relevant legal authority. *Id.* "Where the grounds upon which a motion is made before the trial court

---

5. Unlike the pricing information, CDC's labor and equipment estimates were job-specific.

differ from the grounds argued on appeal, appellate courts will generally dismiss those arguments as unpreserved." *State v. Gonzalez*, 2015 UT 10, ¶ 24, 345 P.3d 1168.

¶26    In supporting its motion for a directed verdict before the trial court, Tradesmen argued that the evidence could not show that CDC's bid information was a trade secret, focusing only on the first component of the trade secret definition. But Tradesmen did not support its motion with a specific argument that the bid information was not the subject of reasonable efforts to maintain its secrecy, which is the second component of the trade secret definition. As a result, Tradesmen did not give the trial court an opportunity to rule on the issue, *see 438 Main St.*, 2004 UT 72, ¶ 51, and its argument on appeal regarding CDC's efforts to keep the bid information secret is a new argument and therefore unpreserved, *see Gonzalez*, 2015 UT 10, ¶ 24.

B.    Misappropriation

¶27    Tradesmen also contends CDC presented no competent evidence to show misappropriation of CDC's bid information. Specifically, Tradesmen argues that although CDC's "evidence may in some manner show that [Tradesmen] had the opportunity to use CDC's bid information, it does not in any meaningful way evince that [Tradesmen] actually used CDC's information in preparing [its] own bid." We are not persuaded.

¶28    Under the UTSA, "misappropriation" is defined as follows:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret; or

(ii) at the time of the disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

> (A) derived from or through a person who had utilized improper means to acquire it;

> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Utah Code Ann. § 13-24-2(2) (LexisNexis 2013). "Improper means" under the act includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 13-24-2(1).[6] This can be inferred by circumstantial evidence. *See CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 30, 274 P.3d 317 (citing *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 50, 235 P.3d 749).

---

6. The UTSA defines "person" to mean "a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity." Utah Code Ann. § 13-24-2(3) (LexisNexis 2013).

¶29 Contrary to Tradesmen's contention, CDC presented competent evidence to support a finding that Tradesmen misappropriated CDC's bid information. In particular, CDC presented evidence that showed Tradesmen used CDC's bid information and labor estimates to underbid CDC, knowing that the information was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . or derived from or through a person who owed a duty to [CDC] to maintain its secrecy or limit its use." *See* Utah Code Ann. § 13-24-2(2)(b)(ii)(B)–(C). For example, evidence showed that Carsey was aware of the secrecy surrounding the bid information and the bidding process.[7] CDC also offered evidence that Carsey concealed his knowledge and involvement with Tradmen, even while he and Midgley worked together to develop CDC's bid, which showed that Carsey knew CDC's estimates of the amount of time, labor, and equipment required to complete the Project. It also provided evidence which demonstrated that Allen had access to CDC's pricing information. Finally, CDC presented evidence that Carsey and Allen were in frequent contact and worked together on Tradesmen's bid before it was due, and that Tradesmen ultimately submitted a bid lower than CDC. This evidence tended to show that Tradesmen had access to all the information it needed to figure out CDC's actual bid and how to underbid CDC. Even though CDC may not have presented direct evidence of use, it presented sufficient circumstantial

---

7. Although this court affirmed the dismissal of CDC's breach of fiduciary duty claim against Carsey on preemption grounds, *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶¶ 50–53, 274 P.3d 317, the jury could still consider whether Carsey had a duty to maintain the secrecy of CDC's labor estimates in evaluating whether Tradesmen misappropriated CDC's information, *see* Utah Code Ann. § 13-24-2(1), (2)(b).

evidence from which a jury could conclude that Tradesmen used CDC's bid information without authorization.

¶30   In sum, CDC's evidence that its bid information was a trade secret that Tradesmen misappropriated was sufficient to withstand a motion for a directed verdict. Accordingly, we affirm the trial court's denial of Tradesmen's motion for a directed verdict.

## II. Jury Instructions

¶31   Tradesmen next contends the trial court erroneously instructed the jury regarding the law of the case in two ways. First, Tradesmen contends that even though the court instructed the jury that CDC's PPA, pricing information, and equipment rates are not trade secrets, it inadequately advised the jury on this issue because it "waited until the presentation of jury instructions to provide any direction to the jury as to the law on trade secrets and the law of the case." Second, Tradesmen, citing *CDC Restoration & Construction, LC*, 2012 UT App 60, ¶ 24, contends the court should have added the following language to the instruction defining a trade secret:

> As to the standard for [whether information derives independent economic value], it is not whether the information is generally known and readily ascertainable to the general public, but based on the defendants' knowledge and experience, whether the information was known or ascertainable to them.

Tradesmen further argues it was prejudiced by the omission of this language because "the jury was entirely misled as to the law" in that "the law of the case doctrine mandated that the jury consider the interplay of the Defendants' knowledge and expertise in their determination as to whether the bid information constituted a trade secret."

¶32    A jury instruction that accurately states the law is not erroneous. *See State v. Gallegos*, 849 P.2d 586, 590 (Utah Ct. App. 1993). As long as "the jury instructions as a whole fairly instruct the jury on the applicable law, reversible error does not arise merely because one jury instruction, standing alone, is not as accurate as it might have been." *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 16, 977 P.2d 474 (citation and internal quotation marks omitted). Accordingly, "[f]ailure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *Martinez v. Wells*, 2004 UT App 43, ¶ 26, 88 P.3d 343 (citation and internal quotation marks omitted).

¶33    At the close of evidence, the trial court gave the jury all the instructions, including Instruction 30, which explained that "it is the law that CDC's [PPA], pricing information, and equipment rates to perform the E-Bay Project are not trade secrets." Tradesmen argues that by issuing this instruction at the end of trial—rather than when CDC presented evidence regarding the PPA, pricing information, and equipment rates— the jurors were "in an untenable situation because they had no clear understanding of what [CDC] was required to prove under the law." But Tradesmen ignores that its own counsel informed the jury in opening statements that "the law of this case is that [CDC's] pricing information, which is to be kept separate from the actual bid, is not a trade secret." Additionally, at the time of the PPA's admission into evidence, the trial court indicated that a jury instruction related to the PPA would be forthcoming.

¶34    Furthermore, Tradesmen has presented no authority to support its contention that the court should have diverted from its routine practice of instructing the jury at the close of evidence. And, it has not shown that Instruction 30 misstated the law or was otherwise inaccurate. *See CDC Restoration*, 2012 UT App 60, ¶ 27. Instruction 30 clearly informed the jury that it

could not consider as trade secrets the PPA, pricing information, and equipment rates. We therefore do not agree with Tradesmen that the court inadequately advised the jury on the law of the case.

¶35   We also disagree with Tradesmen's contention that the trial court erred when it declined to include Tradesmen's proposed language for the instruction defining a trade secret. Even though Utah case law has expounded upon the statutory definition of a trade secret, the court was not required to include additional language in the instructions, because the instructions tracked the statutory language and correctly stated the law. Accordingly, we are not persuaded that the jury instructions were inadequate or misled the jury as to the law.

### III. Evidentiary Rulings

¶36   Finally, Tradesmen contends that under rules 402 and 403 of the Utah Rules of Evidence, the trial court should not have admitted CDC's PPA into evidence. In particular, Tradesmen argues that because CDC's labor and pricing information is not entitled to trade secret protection as it was readily ascertainable information, the court should have excluded CDC's PPA. Tradesmen contends that the PPA containing pricing information was not relevant, because it "could not lend any credence to the issue of whether [Tradesmen] misappropriated [CDC's] bid or to the issue of [Defendants'] credibility." Tradesmen further contends that the PPA should have been excluded as unfairly prejudicial because the PPA "mis[led] the jury into believing that [Tradesmen] improperly took and used CDC's pricing information even though . . . such information was not as a matter of law a trade secret."

¶37   Rule 401 of the Utah Rules of Evidence provides that evidence is relevant if "it has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Utah R. Evid. 401. This presents "a very low bar

that deems even evidence with the slightest probative value relevant and presumptively admissible." *State v. Richardson*, 2013 UT 50, ¶ 24, 308 P.3d 526 (citation and internal quotation marks omitted). Under rule 403, a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403. We bear in mind that "[t]rial courts have wide latitude in making determinations of relevance, probativeness, and prejudice." *Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 38, 63 P.3d 686 (alteration in original) (citation and internal quotation marks omitted).

¶38 We conclude that under rule 401, the PPA was relevant to CDC's claim that Tradesmen misappropriated its bid information. Tradesmen's argument appears to be that because the PPA, pricing information, and equipment rates are not trade secrets in and of themselves, any information about the PPA was irrelevant to the question of whether the bid information was a trade secret. This argument is not well taken. The PPA was still relevant to CDC's claim because it contained the pricing information that was a key component of the overall bid information. When considered in light of the evidence that Allen had access to the PPA, the PPA tended to make it more probable that Tradesmen had access to CDC's pricing information and combined that information with Carsey's knowledge of CDC's labor and equipment estimates to calculate CDC's actual bid.

¶39 We also conclude that the trial court did not exceed its discretion in declining to exclude the PPA under rule 403. The only unfair prejudice that Tradesmen contends resulted from the admission of the PPA is that the jury might have been confused about whether the PPA itself was a trade secret. But any possible confusion was addressed by the jury instruction informing the jurors that "CDC's [PPA], pricing information, and equipment rates to perform the E-Bay Project are not trade secrets." Indeed,

at the time of the PPA's admission into evidence, the court told the jury to expect an instruction related to the PPA.[8] Furthermore, CDC's closing arguments highlighted that the PPA was not a trade secret. As a consequence, Tradesmen has not shown that the probative value of the PPA was substantially outweighed by the danger of unfair prejudice or that the court exceeded its discretion in admitting the PPA.

## CONCLUSION

¶40  The trial court did not err in denying Tradesmen's motion for a directed verdict on CDC's claim for misappropriation of bid information. Tradesmen has not identified any errors in the jury instructions and has not established that the trial court exceeded its discretion in admitting evidence. Accordingly, we affirm.

———————

8. Alternatively, Tradesmen argues that if the PPA was admitted, it should have been "admitted only in conjunction with a cautionary instruction as to the law of the case." But Tradesmen does not explain how a cautionary instruction would have differed from the instruction that the court actually gave, and we have already rejected Tradesmen's claim that the trial court erred in not issuing Instruction 30 at the time the court admitted the evidence. *See supra* ¶¶ 30, 33.